

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
    Etan Leibovitz,                        )

          Plaintiff,           )

        vs.                        )

JUDGE ANTHONY FERRARA, individually and in )
his official capacity as Justice of the Criminal Court )
of the city of New York,  County of New York, )
                                  )

JUDGE ERIKA EDWARDS, individually and in )
her official capacity as Justice of the Criminal Court )
of the city of New York,  County of New York, )
                                  )

ASSISTANT DISTRICT ATTORNEY FRANCESCA )
BARTOLOMEY, individually and in her official )
capacity as ADA for the New York County )
District Attorney's Office )
               Defendants.         )
-----------------------------------------------------------------X

Civil Docket No. __2601__

VERIFIED COMPLAINT

MATSUMOTO, J.
BLOOM, M.J.

CV 14 2601

The complaint of the plaintiff, Etan Leibovitz, respectfully shows and alleges as follows:

## Nature of the Action

1. By this action, plaintiff Leibovitz seeks to end the pattern and practice of unnecessary abuse of power by judges and (Assistant) District Attorneys.

2. Black robe disease (also known as black robe syndrome) is a condition which is not widely known to the general public, but which every trial lawyer in the country could describe in great detail if they were not too afraid to speak out against judges suffering from it.  It afflicts those lawyers who have reached the pinnacle of professional status by achieving the position of judge, infecting all levels of the American judicial system.

3. Black robe disease is characterized by exhibiting three or more (though frequently all) of the following symptoms:

    i.    Inflated ego and an excessive sense of self-importance

    ii.    Lack of empathy

    iii.    Sudden outbursts of rage (whether genuine or exhibited for show)

    iv.    Refusal to effectively manage scheduling issues

    v.    Belief in a double standard when it comes to the judge's own conduct

    vi.    Lack of patience with inexperienced lawyers

    vii.    Hostility towards lawyers more knowledgeable than the judge

    viii.    Inability to work efficiently

    ix.    A compulsion to waste the time of others

    x.    Imperious attitude

    xi.    The belief that his or her words are dogma

    xii.    An obsessive desire to be kissed on the ass.

4. Most lawyers who become judges are able to stave off the symptoms of this illness from somewhere between 6 to 18 months, depending on their prior moral character and their experience as a litigator. However, studies indicate approximately 96.2% of all judges ultimately succumb to this disease. The small percentage who are able to avoid black robe syndrome do so only by a strict regimen of prayer, meditation, and vodka.

5. Removing one judge from office requires putting another one in his place who will likely fall victim to the same condition, so that method of treatment has been found ineffective. Due to the absurd level of power granted to judges by our judicial system (created, conveniently enough, by judges), there is little that can be done other than raise public awareness of the issue. Raising public awareness does absolutely nothing to solve the problem, but at least people may be more understanding when they see a lawyer walking out of a courthouse shouting obscenities and making a beeline to the nearest bar.

6. Prosecutorial misconduct is more widespread than the numbers indicate, but it's nearly impossible to police lawyers who would sacrifice justice for convictions. Determining the true amount of prosecutorial misconduct in the system is nearly impossible. It would be like trying to count drivers who speed; the problem is larger than the number of tickets would indicate. But one group has recently examined the problem to the extent public records allow. The Center for Public Integrity, a nonpartisan organization involved in public service journalism, reviewed more than 11,000 cases in which prosecutorial misconduct was alleged at the appellate level. It concluded that hundreds of local prosecutors across the country have bent or broken the rules.

7.  The report, "Harmful Error: Investigating America's Local Prosecutors," took a team of 21 researchers and writers three years to complete. The study identified 223 prosecutors across the nation who, since 1970, had used tactics that unfairly affected the outcome of 2,017 trials. In Florida, the center identified 253 cases in which a court found that a prosecutor's conduct prejudiced the accused. The misconduct ran the gamut from failing to disclose evidence helpful to the defense to mischaracterizing the nature of evidence before a jury. But it all came with the same taint: a prosecutor willing to sacrifice justice and fair play to win a conviction.

8.  Though the number of prosecutors cited by courts for misconduct is relatively low - there are 30,000 local prosecutors - the study makes clear that the bulk of improper action is impossible to quantify. "In most jurisdictions, at least 95 percent of the cases that pour in from the police never reach a jury," noted the report, "which means any misconduct occurs away from public view. The only trial those defendants receive takes place in the prosecutor's office; the prosecutor becomes the judge and jury."

9.  The disproportionate power prosecutors have under our system means it is vital to have some policing mechanism to ensure they do their jobs fairly. Yet, this is where we fall far short. The system protects prosecutors from civil liability even when they knowingly mishandle cases. And the legal concept of "harmless error" allows convictions to stand unless the prosecutor's improper actions affected the outcome of a trial.

10. The experts say the best approach to policing prosecutorial abuse would be for state bar associations to investigate and act firmly against the licenses of prosecutors who abuse their discretion. Unfortunately, lawyers are not very good at upholding the ethics of their own profession. According to the study, only two prosecutors have faced disbarment for their misconduct in the last 33 years. Prosecutors who knowingly hold back evidence of innocence from the defense or willingly used faulty witness testimony know they have little worry that they will be called to account.

11. In 1984, (Pulliam v. Allen - 466 U.S. 522 (1984)) after respondents were arrested for nonjailable misdemeanors, petitioner, a Magistrate in a Virginia county, imposed bail, and when respondents were unable to meet the bail, petitioner committed them to jail. Subsequently, respondents brought an action against petitioner in Federal District Court under 42 U.S.C. § 1983, claiming that petitioner's practice of imposing bail on persons arrested for nonjailable offenses under Virginia law and of incarcerating those persons if they could not meet the bail was unconstitutional. The court agreed and enjoined the practice, and also awarded respondents costs and attorney's fees under the Civil Rights Attorney's Fees Awards Act of 1976. Determining that judicial immunity did not extend to injunctive relief under § 1983 and that prospective injunctive relief properly had been awarded against petitioner, the Court of Appeals affirmed the award of attorney's fees.

12. Plaintiff Leibovitz brings this action for equitable relief as follows: injunctive and declaratory relief to redress Defendants' violations of Plaintiff's rights under the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendment to the United States Constitution and the Constitution and laws of the State of New York in violation of Title 42 U.S.C. §§ 1983. This lawsuit seeks this Court's strong hand to finally put an end to the Defendants' abuse.

## JURISDICTIONAL BASIS

13. Plaintiff Leibovitz claims federal jurisdiction pursuant to Article III § 2 which extends the jurisdiction to cases arising under the U.S. Constitution.

14. Plaintiff Leibovitz brings this suit pursuant to Title 42 U.S. Code § 1983 for violations of protections guaranteed to him by the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments of the Federal and New York State Constitution, by defendant JUDGE ANTHONY FERRARA, under color of law in his capacity as a judge in the Criminal Court of the city of New York, County of New York, by defendant JUDGE ERIKA EDWARDS, under color of law in her capacity as a judge in the Criminal Court of the city of New York, County of New York, by defendant ASSISTANT DISTRICT ATTORNEY FRANCESCA BARTOLOMEY under color of law in her capacity as assistant district attorney for New York County, District Attorney's Office.

## **Plaintiff**

15. Etan Leibovitz is a natural person residing at 83-19 141St Apt 207, Briarwood, NY 11435.

## **Defendants**

16. Defendant ANTHONY FERRARA is a Judge presiding at Criminal Court of the city of New York, County of New York.

17. Defendant ERIKA EDWARDS is a Judge presiding at Criminal Court of the city of New York, County of New York.

18. Defendant FRANCESCA BARTOLOMEY, is an assistant district attorney for the New York County District Attorney's Office.

# **STATEMENT OF CLAIM**

19. On or about April 3, 2013, Plaintiff Leibovitz was arrested for the first in his life and charged with

### **Docket #: 2013NY026141**

|   |   |   |
|---|---|---|
| a. | PL 240.30(1) (a) | Aggravated harassment in the second degree. |
| b. | PL 140.15(1) | Criminal trespass in the second degree |
| c. | PL 205.30 | Resisting Arrest |
| d. | PL 240.26(1) | Harassment in the 2nd Degree |

20. On or about April 4th, 2013, Plaintiff Leibovitz's college friend, defense attorney Jason Steinberger, facilitated in getting him out of jail. Plaintiff Leibovitz was arraigned and released on his own recognizance. The next court appearance was scheduled for May 28, 2013.

21. On or about and between mid April , 2013 to mid May, 2013 Plaintiff Leibovitz spoke to Mr Steinberger multiple times over the phone, stating his desire to proceed with his criminal case pro se and that at his next court appearance he wants Mr. Steinberger to file a motion to withdraw as counsel.

22. On or about and between late April to early May, Plaintiff Leibovitz was at the Queens Supreme Court Law Library studying criminal law and doing research using Lexis Nexis with regards to the aforementioned alleged charges set before him. While analyzing the history of Penal Law 240.30 Aggravated harassment in the second degree section [1][a] , Plaintiff Leibovitz discovered the case People v Pierre-Lewis *34 Misc. 3d 703*; *927 N.Y.S.2d 592*; *2011 N.Y. Misc. LEXIS 3642*; *2011 NY Slip Op 21254* and committed it to memory.

23. On or about May 28th, 2013 in Manhattan Criminal Court of New York County in Part B, located at 100 Centre Street, New York, in front of defendant JUDGE ERIKA EDWARDS, herein defendant EDWARDS, and defendant ASSISTANT DISTRICT ATTORNEY FRANCESCA BARTOLOMEY, herein defendant BARTOLOMEY, defense attorney Jason Steinberger filed an oral motion to withdraw as counsel for Plaintiff Leibovitz.

24. Defendant EDWARDS granted Mr. Steinberger's motion to withdraw as counsel

25. Plaintiff Leibovitz then stated intelligently and unequivocally he wanted to proceed pro se. After stating intelligently and unequivocally in open court his desire to proceed pro se , Defendant EDWARDS then denied his application and "imprisoned" him to Mr. Altman, an 18B lawyer.

26. Plaintiff Leibovitz restated once again respectfully, intelligently and unequivocally that he wanted to represent myself. Plaintiff Leibovitz protested in open court while on the record that he refused having Mr. Altman as his attorney and that Defendant EDWARDS was violating and interfering with his Constitutional rights.

27. Defendant EDWARDS did a double take ( minutes don't depict the whole story with her facial expression) and stated " Now you listen to me. The Court has made its decision" or words to that effect.

28. Three court officers working for the State approached Plaintiff Leibovitz aggressively and tried to intimidate him but to no avail.

29. On or about May 28th, 2013,  Plaintiff Leibovitz had two witnesses Christine Liderhouse and her mother, Sue Liderhouse,  in court who observed Defendant EDWARDS and the court officers' actions.

30. On or about and between May 28, 2013 to  July 24, 2013, Plaintiff Leibovitz spoke to Mr. Altman and voiced his concerns about the courts violating his civil liberties, his due process and constitutional rights for which Mr. Altman stated "you will eventually get it (go pro se)".   Plaintiff Leibovitz said ," What does that mean my request should have been granted from day one and by eventually, Mr Stuart, when will that be?", or words to that effect.

31. On or about and between mid-June early July, Plaintiff Leibovitz called the court attorney for Defendant EDWARDS, Alana Gardner's office (phone number (646) 386-4678) ) and spoke to Alana Gardner (herein Ms. Gardner) for the first time.   A conversation between Ms. Gardner and Plaintiff Leibovitz ensued for  over 30  minutes. Plaintiff. Leibovitz expressed to Ms. Gardner his concerns that Defendant EDWARDS was violating his civil liberties and interfering with his constitutional rights to construct his own defense.  Plaintiff Leibovitz also mentioned and discussed the case,  Faretta vs California,  and that Defendant EDWARDS imprisoned him to an 18B lawyer.  Ms. Gardner spoke to Plaintiff Leibovitz without any hesitation and stated that Plaintiff Leibovitz  had to file a written motion for which Plaintiff  Leibovitz stated he doesn't have to ,  all Plaintiff Leibovitz has to  do is state it unequivocally, intelligently in open court.   Ms. Gardner said she will raise Plaintiff Leibovitz's concerns up to Defendant EDWARDS and that Plaintiff  Leibovitz  should request to go pro se again in his next court appearance.

32. On or about June 12, 2013,  Mr Altman filed an Omnibus Motion.

33. On or about July 24, 2013 in Manhattan Criminal Court of New York County  in  Part B, located at 100 Centre Street, New York,  a hearing was scheduled in front of Defendant EDWARDS.  At the hearing,  Defendant BARTOLOMEY, Mr Altman and Plaintiff Leibovitz were present.  As a result of the Omnibus motion, the PEOPLE dismissed the 2nd charge of Trespass. The PEOPLE also offered Plaintiff Leibovitz an ACD (Adjournment in Contemplation of Dismissal) for which of course Plaintiff Leibovitz had no interest in

because Plaintiff Leibovitz was innocent of all charges.  Defendant Edwards then granted
Plaintiff Leibovitz several hearings (Huntley, Wade and Dunaway) and was about to adjourn
the hearing when Mr Altman stated he wanted to be heard  on a matter.


### July 24, 2013 Minutes page 4 line1- page 5 line 17

**Mr Altman:**     Also, I spoke to my client in this matter.  He indicated on the last date he
wanted to represent himself.  Mr Leibovitz, he's indicated to me he wishes to
tell the Court he still wishes to represent himself in this matter.  However, he
would like myself to be by his side during the case as for any assistance he
may need.  That's how he would like to proceed.


**Judge Edwards:**  This is what we discussed on the last court date, and I know it was over
your objection.  I did not grant your application to represent yourself.

**Mr Leibovitz:**  That's correct

**Judge Edwards:**  I'm still going to keep it the way it is.  You have an attorney.  I'm going
to keep him as your representative to the Court.   I'm going to deny your
application to represent yourself.  Do you have a written motion?

**Mr Leibovitz:** No, I'd like to discuss Faretta versus Claifornia.  It's stated in a criminal trial
defendants can represent themselves in a State or Federal Court.

**Judge Edwards:** It has to be approved by the Court.

**Mr Leibovitz:**  You asked my education, gave me an exam.  I passed.  I'm an educated
person.  I have a book.  I'm determined.  I have studied all the charges.

**Judge Edwards:** I can understand that, sir.  I respect your knowledge.  I don't mean to
disrespect you in any way.  I don't believe you passed the examination.

**Mr Leibovitz:** You only asked me four questions in reference to my education.  You didn't
asked my any legal questions.

**Judge Edwards:** I looked at the facts of the case.  My answer is no.  My decision is you
will be represented by counsel.

**Mr Leibovitz:** You didn't ask me any legal questions.

**Judge Edwards:**  Sir, you're not going to be representing yourself in this case.  September
26 for hearing and trial.

34. Once again Defendant EDWARDS violated and interfered with Plaintiff Leibovitz's
Constitutional rights. On May 28, 2013, during Plaintiff Leibovitz's first application to
precede pro se , Plaintiff Leibovitz requested that he proceed with his case all by himself.
On July 24, 2013, during Plaintiff Leibovitz's second application to proceed pro se,  he
requested that he proceed with his case with Mr. Altman, on the side.

35. On information and belief, on or about August 5th, 2013, defendant EDWARDS signed Mr
Altman's subpoena to command "Owner and Management Le Triomphe Building" to
produce by September 2, 2013 the  original videos and recording from the lobby and the
front of the building of Le Triomphe located at 245 58th Street,  New York, NY 10022
where the April 3rd, 2013 arrest occurred for the docket 2013NY026141.

36. On August 6th, 2013 Plaintiff Leibovitz went to the Queens Supreme Court law library to
continue doing  further research using Lexis Nexus with regards to PRO SE defendants and
the constitutional rights we have to  conduct our own criminal defense without a lawyer.

37. On or about August 6th, 2013, while at the Law Library,   Plaintiff Leibovitz discovered the
case Wiesner v Abrams ,**726 F. Supp. 912; 1989 U.S. Dist.**  and  read the Opinion by the
Appellate Judge Dearie.  In the Opinion by Judge Dearie he explains very eloquently how
trail court judges are required to  handle defendants who request to proceed  Pro Se.

38. On or about August 7th, 2013,  after carefully perusing every page of Judge Dearie's
Opinion in Wiesner v Abrams the day before, as well as reviewing the opinion by Judge
Valerie in People vs Pierre-Lewis, Plaintiff Leibovitz decided it was time to stand up once
again for his rights, Due Process and Constitutional (6th and 14th Amendment)  rights so

Plaintiff Leibovitz exercised his First Amendment Right , freedom of speech, and  called Ms. Gardner,  at (646) 386-4678, a public line where a conversation ensued.

The first call:  "

> **Mr. Leibovitz:** Good afternoon
> **Ms. Gardner:** I can't speak to you
> **Mr. Leibovitz:** Why is that ?
> **Ms.Garner:** You have a lawyer
> **Mr. Leibovitz:** I don't have a lawyer, Judge Edwards imprisoned me to a lawyer. Why did Judge Edwards deny my request to proceed pro se, I thought you were going to advise her as you stated from our prior conversation?
> **Ms. Gardner**: I can't talk to you either way
> **Mr. Leibovitz:** Why because its ex-parte?
> **Ms. Gardner**: Yes….
> **Mr. Leibovitz:** You respect Ex Parte but not the Constitution? Lets get Francesca Bartolomey on the phone then.  This is a fucking joke.  This doesn't make any sense to me.  Can someone please do their job!!!!
> " or words to that effect.  Ms. Gardner hung up.

39. A few minutes later Plaintiff Leibovitz made his second call which resulted in Ms. Gardner screening his call and the call going straight to voicemail.

40. The third call was made a few minutes later which resulted in Ms. Gardner once again screening his calls. Plaintiff Leibovitz  left a voicemail  on the public phone line.

41. The first message Plaintiff Leibovitz left stated his mens rea and what his intent was with regards to making this call.  Plaintiff Leibovitz stated that defendant EDWARDS needed a refresher course on the Constitution, caselaw with regards to Pro Se protocol, Faretta vs California , that defendant EDWARDS is incompetent and is putting him in this predicament, that she should be reprimanded. Plaintiff Leibovitz also stated his dissatisfaction with Ms Gardner and her failure to do her job as a court attorney for defendant EDWARDS.  Plaintiff Leibovitz's choice of words with regards to profanity encompassed the whole spectrum. Plaintiff Leibovitz's  tone of voice fluctuated many times but mostly residing in the highest decibel.   There was no threat just protected speech.

42. The fourth call was made a few minutes later which resulted in Plaintiff Leibovitz leaving yet another voicemail message on the public phone line. In this message, Plaintiff Leibovitz once again uses profanity in his high decibel tone of voice to express his dissatisfaction with the jobs that defendant EDWARDS and Ms. Gardner were doing or more like not doing. As public servants they were failing the People of New York. Plaintiff Leibovitz reiterated that his due process was being violated and that he wanted to proceed pro se and to conduct his own defense.

43. The fifth call was made a few minutes later which resulted once again in Plaintiff Leibovitz leaving his third voicemail message on the public phone line. Normally Plaintiff Leibovitz would leave only one message but its blatantly obvious that the COURTS were ignoring his rights. With the third voicemail that Plaintiff Leibovitz left, he mostly resorted to stating his complete dissatisfaction for defendant EDWARDS. Once again he did use the whole spectrum of profanity and his decibel tone of voice once again did fluctuate but mostly staying at the highest spectrum. Plaintiff Leibovitz questioned how defendant EDWARDS passed the bar and how the hell she became a Judge. Once again, Plaintiff Leibovitz restated his mens rea and his intent was to exercise his First Amendment right and to file grievances with the Courts with regards to their denial of his right to conduct his own criminal defense.

44. On or about August 8th, 2013, Mr. Altman and Plaintiff Leibovitz had a scheduled meeting in the afternoon at Mr. Altman's office located at 2 Allen St , NY , NY.   While Plaintiff Leibovitz was waiting in Mr. Altman Esq's office for him to return from court to commence their meeting, Mr Altman called Plaintiff Leibovitz and asked him if he called defendant EDWARDS or her court attorney Ms. Gardner. Mr Altman informed Plaintiff Leibovitz that the courts want to see him tomorrow, August 9th, 2013, at 9:30 a.m. and that he shouldn't call the Courts anymore because the Courts will charge him with harassment.  The meeting with Mr. Altman was canceled as a result.

45. On or about August 8th, 2013 after completing the phone call with Mr Altman, Plaintiff Leibovitz left Mr. Altman's office and went to Manhattan Criminal Court, (which is located a few blocks west of Mr. Altman's office) located at 100 Centre Street and entered the

People's Court Part B, where defendant EDWARDS was residing that day. Plaintiff Leibovitz approached one of the Court Officer's that works for the People and handed him a copy of Judge Dearie's Opinion in  Weisner v. Abrams, out of the United States District Court , **726 F. Supp. 912; 1989 U.S. Dist.** to give to defendant EDWARDS.  Plaintiff Leibovitz told the court officer to inform defendant EDWARDS that she has 18 hours to read  it"  and then left the courtroom and exited the court.

46. On or about August 9, 2013, Mr Altman and Plaintiff Leibovitz arrived at the Manhattan Criminal Court of New York County, Part B where defendant EDWARDS's was residing . Defendant EDWARDS "recused herself" and notified Mr Altman and Plaintiff Leibovitz that his case (docket# 2013NY026141) was assigned today for Jury Part 6 in front of defendant FERRARA.

47. On or about August 9th, 2013 while sitting in the spectator's seats in the courtroom, defendant FERRARA asked Plaintiff Leibovitz  if he can speak to his attorney, Mr Altman. Plaintiff Leibovitz quickly corrected defendant FERRARA and responded," Mr Altman  is not my attorney I was "imprisoned" to him by defendant EDWARDS against my will.  You can speak to him if you want.", or words to that effect.

48. On or about August 9th, 2013,  Mr Altman and defendant BARTOLOMEY gathered around defendant FERRARA's bench to discuss a few subject matters. On information and belief some of the subject matters were about case docket# 026141 , the scheduled hearings, the trial and as defendant FERRARA stated on the record

      **August 9th, 2013 Minutes page 2 line 10**

      "And there's an issue as to whether or not Mr Leibovitz should be allowed to proceed in a pro se fashion."

49. On or about August 9th, 2013 defendant FERRARA commenced the hearing by making the following statements that defendant EDWARDS should have recited from inception at my May 28, 2013 hearing:

**August 9th, 2013 Minutes page 2, line 25 to page 4 line 4**

**Judge Ferrara:** Do you understand that you have a constitutional right to be represented by an attorney?

**Mr Leibovitz:** That's correct, yeah

**Judge Ferrara: You also understand you can represent yourself?**

**Mr Leibovitz:** That's correct.

**Judge Ferrara:** If you cannot afford an attorney, one can be assigned for you without expense and obligation.  And Mr Altman has been assigned to represent you and you will not have to pay him.  Do you understand that?

**Mr Leibovitz:** Yes.

**Judge Ferrara:** Have you had enough time to think about this desire on your part to proceed and represent yourself without an attorney?

**Mr Leibovitz:** Yes, I have, more than enough time.

Judge Ferrara:  I'm sorry?

**Mr Leibovitz:** More than enough time.

**Judge Ferrara:** Okay Can you tell me a little bit about your educational background?

**Mr Leibovitz:** I graduated with a BA in biology from Binghamton University with a 3.78 GPA.

**Judge Ferrara:** Have you ever been involved in a criminal case as a defendant?

**Mr Leibovitz:** Defendant, no.

**Judge Ferrara:** Is this your first appearance?

**Mr Leibovitz:** In criminal, yes.  Never been arrested.


50. On or about August 9th, 2013 defendant FERRARA then went over some criminal legal proceeding

   a) Jury proceedings for Misdemeanor:  Jury of 6 and 2 alternates
   b) Rules of Evidence
   c) Hearsay
   d) Proper Etiquette in the courts

51. On or about August 9th, 2013 after the discussion of the criminal legal proceeding, Plaintiff Leibovitz addressed defendant FERRARA about  defendant EDWARDS's behavior and her violating and interfering with his constitutional rights:

**August 9th, 2013 Minutes page 6 lines 1 to Page 7 line 1**

**Mr Leibovitz:** I have a question with regard to Judge Edwards' behavior, violating my constitutional rights, is there anything going to be done with regards to her action?

**Judge Ferrara:** We cannot discuss that at this point, nor is it my job to advise you on this. What I will tell you, from this point onward she will have nothing to do with the case.

**Mr Leibovitz:** Okay

**Judge Ferrara:** And you will have no further communications with her or her court attorney.

**Mr Leibovitz:** All right

**Judge Ferrara:** Do you understand?

**Mr Leibovitz:** Absolutely.

**Judge Ferrara:** If you are allowed to proceed pro se, the only communications you can have with the Court are in writing. Do you understand?

**Mr Leibovitz:** All right

**Judge Ferrara:** No telephone

**Mr Leibovitz:** Once she violate my constitutional rights—

**Judge Ferrara:** We are not talking about Judge Edwards.

**Mr Leibovitz:** If there is respect from the Court, I will respect the Court.

52. On or about August 9th, 2013 after attempting to "address my concerns" with regards to defendant EDWARDS's behavior , defendant FERRARA then further discussed how a trial is conducted in criminal court:

      1.  Picking a Jury
      2.  Opening Statement
      3.  Cross Examining Witnesses
      4.  Defendant's own witnesses and questioning them
      5.  Obligations as a Pro Se litigant

53. On or about August 9th, 2013 after addressing trial procedures and the obligations as a Pro Se Litigant, defendant FERRARA addressed my Pro Se Application:

<u>**August 9th, 2013 Minutes page 8 lines 20 to Page 9 line 25**</u>

**Judge Ferrara:** Do you have any questions about your obligations as a pro se litigant?

**Mr Leibovitz:** I'm good

**Judge Ferrara:** I'm going to grant your application now. Mr Altman will remain on the case as your legal advisor. As a legal advisor he will be available to you at all times to answer your questions and advise you as to strategy. Do you understand?

**Mr Leibovitz:** Yes

**Judge Ferrara:** You will be present on all court appearances. If you seek to advance the case and your application is granted you must notify Mr Altman so he can attend. Please confer with him before you advance the case to the DA.

**Mr Leibovitz:** Absolutely.

**Judge Ferrara:** I noticed from the papers that there was a hearing and trial ordered in the case and that there will be hearings and then an immediate trial, is that right People?

**MS BARTOLOMEY:** That's correct, Judge .

**Judge Ferrara:** Okay , I'm going to put the case on for trial in Jury Part 13.

**Mr Leibovitz:** Okay.

**<u>Judge Ferrara:  I 'm going to give you enough time to prepare the case.</u>**

54. If one analyzes the colloquy that took place during the August 9th, 2013 hearing , with regards to defendant FERRARA's discussion with Plaintiff Leibovitz and his desire to proceed pro se, it is blatantly obvious that the "alleged order" ( Averment number 51)  did not constitute a lawful mandate or order of the court.

55. On or about and between August 9th, 2013 and August 28, 2013, defendant BARTOLOMEY returned   Plaintiff Leibovitz's call. The call was put on speaker so that her co-worker could listen and witness the call.  Plaintiff Leibovitz asked defendant BARTOLOMEY to fill him in with the conversations she had with Jason Steinberger and Mr Altman.

56. On or about August 14, 2013, Kenneth J Ward served  Mr Altman's subpoena duces tecum that was signed by Judge Edwards on August 5th, 2013.

57. On or about August 28th, 2013,  Plaintiff Leibovitz's  "legal advisor" Mr Altman Esq. emailed him  stating,"

> Hi Etan
>
> I was contacted by Amy Ward regarding the subpoena.
> She told me there was an error with the subpoena  and
> she would like a new one and she would comply with it.

I told her you were handling your own case now
Her number is <u>212-835-2400</u>
Thanks
Stuart" or words to that effect.

58. Plaintiff Leibovitz's "legal advisor" Mr Altman further stated that he won't be able to put
another Judicial Subpoena Duces Tecum together because he was busy with his other cases
and trials and that Plaintiff Leibovitz should go ahead and file a subpoena on his own.

59. Plaintiff Leibovitz didn't want to argue with his legal advisor Mr Altman , who went
against what defendant FERRARA stated on August 9th, 2013 that " If you (Mr Leibovitz)
wish to subpoena witnesses, you will talk to Mr Altman, I'm authorizing Mr Altman to
issue subpoenas on your behalf, provided he agrees with your strategy."

**(August 9th Minutes page 10).**

60. Every day that passed meant that there was a chance Plaintiff Leibovitz would lose the
chance of acquiring his most important evidence, the building's arrest videos. Buildings
after a certain amount of time rerecord over the tapes (According to Amy Ward, the
lawyer for the building where the arrest occurred states it's a 30 day lifecycle).

61. On or about August 28, 2013, Plaintiff Leibovitz called the courts and found out defendant
FERRARA was on vacation.

62. On or about August 28, 2013, Plaintiff Leibovitz called the courts and found out the court
attorney for defendant FERRARA, Mr Schmidt was on vacation as well.

63. On or about and between August 28, 2013 to September 10, 2013, Plaintiff Leibovitz
called defendant BARTOLOMEY several times and left messages to try to set up a
conference call, but defendant BARTOLOMEY never returned his calls.

64. On or about the following week Plaintiff Leibovitz tried several more times to call
defendant FERRARA and Mr Schmidt to see if they returned from their vacations so that
Plaintiff Leibovitz can get his new subpoena signed.

65. Time was of the essence and being unable to get a hold of defendant FERRARA and his court attorney Mr Schmidt, Plaintiff Leibovitz called on or about September 2 to 3rd, 2013 the court attorney for defendant EDWARDS, Ms. Gardner and asked Ms Gardner if defendant EDWARDS could resign a new subpoena since defendant FERRARA and Mr Schmidt were on vacation and since defendant EDWARDS imprisoned him and assigned him the 18 B lawyer who failed to compose a legitimate subpoena that defendant EDWARDS signed back in August 5th, 2013.

66. On or about September 3, 2013, Plaintiff Leibovitz called Ms Gardner because he wanted to get the correct spelling for the following names: Judge Edwards, court officers that were working on May 28,2013 , July 24, 2013 and Ms. Gardner. (On April 8th, 2014 Plaintiff Leibovitz received an acknowledgement letter from New York State Commission On Judicial Conduct with regards to Plaintiff Leibovitz's complaint against both defendant EDWARDS and defendant FERRARA. )

67. On or about September 9th, 2013 an "alleged" bench warrant was issued by Judge Ross for Plaintiff Leibovitz's arrest.

68. On or about and between September 9th to September 23, 2013 , Plaintiff Leibovitz received an initial call from Detective Marisa Valle (herein Detective Valle). Detective Valle informed Plaintiff Leibovitz that there was an outstanding bench warrant for his arrest. Plaintiff Leibovitz then asked Detective Valle to elaborate and to provide him information with regards to the bench warrant. Detective Valle did not take a liking to Plaintiff Leibovitz questioning her and said ,"Mr Leibovitz, we heard you are a good guy, come down to our office, then appear in court to resolve the matter."

69. Plaintiff Leibovitz once again reiterated and asked Detective Valle why there was an outstanding bench warrant for his arrest and to provide him the affidavit of support that was produced in order to get the Judge to sign off for the "alleged bench warrant", furthermore Plaintiff Leibovitz also wanted the name of the Judge who signed off on the warrant. Detective Valle stated " she didn't know", and advised Plaintiff Leibovitz to come down to her office once again that she wanted to help him out. Plaintiff Leibovitz responded and stated, "I am a bit confused: if the legal definition of detective is a person, usually a member of a police force, who investigates crimes and obtains evidence or information how come you can't provide me answers to my questions." or words to that effect.

70. Plaintiff Leibovitz further stated that when Detective Valle provides him answers he will then reconsider his options and hung up on Detective Valle.

71. On or about and between September 9th to September 23, 2013 , Plaintiff Leibovitz then called the general Detective Office to conduct his own investigation and he spoke to a male Detective (recorded the call) and told him to start investigating and know the details before calling people about warrants. Plaintiff Leibovitz provided the male detective all the facts and warned his office that if he is touched and arrested there will be a huge lawsuit. Plaintiff Leibovitz further instructed the male detective that the order defendant FERRARA gave did not constitute a lawful order of the court or a legal mandate. Furthermore the male detective should investigate why defendant EDWARDS recused herself. Like Detective Valle, the male Detective stated just come down here to resolve the matter. Detective Valle then called Plaintiff Leibovitz again later that day and stated Judge Ross signed off on the "alleged bench warrant". Plaintiff Leibovitz then followed up and asked her to provide him the " Affidavit of Support" and a copy of the warrant which she never did.

72. Later on that day, Plaintiff Leibovitz then called Detective Valle because he wanted more details of what was going on. Judge Valle said "Stop harassing me" for which Plaintiff Leibovitz responded "You call me with a bench warrant, with no clue what it's about and then I ask you to provide me information, for you to do your job and now I am harassing you? Does that make any sense? " or words to that effect. Plaintiff Leibovitz then proceeded to curse her out as politely as he can. Plaintiff Leibovitz then warned her that if she doesn't do her job and investigate the bench warrant once this is over Plaintiff Leibovitz was going to see her ass in Federal Court.

73. On or about September 13, 2013 Plaintiff Leibovitz called once again Ms Gardner's office line and asked for her to provide him her full name as well as defendant EDWARDS because Plaintiff Leibovitz was going to file a Judicial complaint and lawsuit against both of them for not doing their jobs and upholding their oath of office.

74. On or about September 16, 2013 at 11 a.m. , Plaintiff Leibovitz called and spoke to Mr. Schmidt to discuss the new subpoena. Mr Schmidt said he would take care of it. Mr. Schmidt and Plaintiff Leibovitz also discussed defendant FERRARA being on vacation, reinforced defendant EWARDS's failure to uphold the Constitution, case law and also informed Mr Schmidt about Judge Ross's bench warrant issued against him. Plaintiff

Leibovitz informed Mr Schmidt that the bench warrant did not constitute a lawful order of the court or a legal mandate because defendant FERRARA never gave a legal order. Even if Defendant FERRARA did it was unconstitutional because Plaintiff Leibovitz's actions on August 7th, 2013 was protected speech due to Mr Leiobvitz's First Amendment Rights and that penalizing him was outside his jurisdiction. Mr Schmidt said he was here to help Plaintiff Leibovitz and that he would look into it.

75. On or about September 17, 2013 Detective Valle went to Plaintiff Leibovitz twin brother's house, told him she was looking for Plaintiff Leibovitz, that she had a bench warrant for Plaintiff Leibovitz's arrest and left his brother her contact info. At 9:40 a.m., Plaintiff Leibovitz's brother emailed him the photo of the bench warrant and Detective Valle's contact card.

76. On or about September 17, 2013, Plaintiff Leibovitz called Detective Valle and asked her if she investigated the "alleged bench warrant"

77. On or about September 23, 2013 at around 6:30 a.m, on information and belief, Plaintiff Leibovitz was arrested by 4 "detectives" from the "OFFICE SQUAD", "John Does". When Plaintiff Leibovitz was detained each John Doe gave each other a high five due to successfully arresting him. Plaintiff Leibovitz started laughing and stated "remember this ugly face because I patiently waited for your arrival and that I will see all of you in Federal Court and that all of you better have good lawyers", or words to that effect

78. On September 23, 2013, Plaintiff Leibovitz was arrested, arraigned and charged with the following:

> Penal Law 240.30(1)(a) Aggravated Harassment in the 2nd Degree
> Penal Law 215.50(3) Criminal Contempt in the 2nd Degree

79. On or about September 23, 2013 while in the Manhattan Detention Center bullpen waiting to see Judge Stratsinger for the bail hearing, a female lawyer for Legal Aid called Plaintiff Leibovitz to come speak to her in the bullpen cubicle and she told him that Legal Aid was representing him. Plaintiff Leibovitz said to her,"Young lady, I will be conducting my own defense and that I don't need your assistance. If I needed an attorney I would have hired a private attorney" or words to that effect.

80. The female lawyer responded and said ," Then you will not see the judge tonight" or words to that effect.  Plaintiff Leibovitz responded and said," Excuse me did I hear your correctly?  If I don't take a lawyer I won't see the Judge tonight?, Did you really say that? Are you interfering and violating my due process as well?  I understand substantive law and procedural law and understand the procedures here.  If you don't allow me to see the judge tonight based on the fact that I didn't take your representation make sure you remember this ugly face because I will sue your asses", or words to that effect.

81. As a result of Plaintiff Leibovitz's action the female lawyer informed the Legal Aid team and the man in charge that night for Legal Aid, entered the bullpen cubicle a few minutes later and stated the same thing.  Plaintiff Leibovitz told him he has five minutes to get Plaintiff Leibovitz out in front of the Judge or Plaintiff Leibovitz will see his ass in Civil Court once Plaintiff Leibovitz gets out.

82. On or about three minutes later, Plaintiff Leibovitz was in front of Judge Stratsinger.

83. On or about September 23, 2013, Plaintiff Leibovitz appeared for arraignment in AR3 in front of Judge Stratsinger where defendant BARTOLOMEY argued that bail should be set for $10,000 and that Mr Leibovitz from day one has been disrespectful to the courts and even refused to turn himself in for the bench warrant that was issued against him by Judge Ross.  Judge Stratsinger took defendant BARTOLOMEY's argument into consideration and then Plaintiff Leibovitz argued his position.  Plaintiff Leibovitz told the Judge that defendant BARTOLOMEY's loves to tell stories from chapter three and not the whole story. Plaintiff Leibovitz told the Judge that from day one (Chapter one), he has been respectful of the courts.  He told the Judge he is standing up for his rights.  Plaintiff Leibovitz further stated that defendant EDWARDS failed to uphold her Oath of Office and violated his due process and denied him not once but twice his right to conduct his own defense and proceed pro se.  Plaintiff Leibovitz also stated that the reason he refused to turn himself in was because the bench warrant is not legal, because defendant FERRARA's order did not constitute a lawful order of the court or a legal mandate.  Plaintiff Leibovitz also reinforced that his August 7th, 2013 behavior, was protected speech due to his First Amendment rights under the NY and USA constitution.  Plaintiff Leibovitz told the judge that even if he sets the bail to $1, he will not post bail out of principle.  The judge rendered a decision and Plaintiff Leibovitz was remanded.

84. On or about September 24, 2013 Plaintiff Leibovitz had to be re-arraigned by defendant FERRARA because as defendant FERRARA stated:

> September 24, 2013 Minutes   Page 3  Lines 11-
>
> **Judge Ferrara:**  I see that when he (Mr Leibovitz) appeared in arraignments, in AR3, the judge remanded him.  That's not a proper resolution of the case.  The CPL does not allow for remand on a misdemeanor, unless it was a violation of a conditional charge.  So I'm going to hear both sides on bail.  People, I'll hear you on bail, and then I'll hear Mr Leibovitz".
>
> **Ms Bartolomey:**  Thank you, Your Honor .  Your Honor, as you are aware, the People requested this bench warrant be issued, as it is our position that the defendant while released on his own recognizance violated the conditions of his release, pursuant to CPL 530.60 sub one , by his continue disregard of your lawful order given here, or given up in Part One, on August 8th , 2013 of this year—on August 9th, I believe of this year, I have a copy of those minutes, if your Honor would like them.
>
> **Judge Ferrara:**  They're in the file and I see that they were supplied in docket ending 2941, which is the most recent arrest, and I read them a minute ago.  I refreshed myself on what happened.
>
> **Ms Bartolomey:**  So it was that conduct that fueled the People's request for the bench warrant in this case.  It's our position that he has now revoked his own status of recognizance.  The conduct described previously is now the basis of a new arrest and a new case.  And I think that a new arrest, although it was made after the bench warrant was ordered , I think that now it's relevant at this stage and our application is that now I think bail should be set on this case in the amount of $10,000 cash or a reasonable bond alternative, as this defendant has shown continuously that he has absolutely no respect for the Court's lawful orders. Your Honor ordered him to stop calling Judge Edward's chambers.  He did not.  He continued to call Ms Gardner and yell and scream at her.  And then when he is offered the opportunity to turn himself

in peacefully on the bench warrant, he began calling Detective Valle cursing her out and then finally threatening her. He's been given every opportunity to turn himself in peacefully, which he has refused to do. I think that now bail is appropriate in this case, and we so we are asking for bail in the amount of $10,000 cash.

**Judge Ferrara:** Okay Thank you I'll hear Mr . Leibovitz

**Mr Leibovitz:** I just want to say that for every action there's always a reaction. And from inception when I was in front of Judge Edwards the courts violated my rights. And you know what ? I have to fight for my rights. I've gone to the law library. I've looked at case law. I respected the courts in the sense of trying to attain my constitutional rights. Now, when I was in front of you—I'm sorry. Before I was in front of you, Judge Edwards issued a subpoena and signed off. The subpoena was not done properly. I reached out to the building and her name is Kim Ward—and told me the subpoena is not legitimate. I respect it, but it's not done properly. So I reached out to you, your chambers. But you were on vacation. Now according to page 10, it states –

**Judge Ferrara:** Page 10 of what?

**Mr Leibovitz:** The minutes from August 9th. You stated to me that Mr Altman issues the subpoenas on your behalf. I requested it and it wasn't done. I was put in a catch 22, where I needed a subpoena signed. So I left a message. I was trying to reach out. I even reached out to her multiple times.

**Judge Ferrara:** To Whom?

**Mr Leibovitz:** The ADA

**Judge Ferrara:** Yes

**Mr Leibovitz:** She doesn't get back to me. Once again my due process is violated. How am I supposed to feel? I am fighting for my rights here. You guys have your false accusations, which I cant wait to defend. My constitutional rights are

disrespected.  I have witnesses on the first day when I was in front of Judge
Edwards, where she tells me."  I'm like " Your Honor, are you familiar with Faretta
Versus California? I have a right."

85. On or about September 24, 2013 , Plaintiff Leibovitz  continued to argue his position that
defendant FERRARA's August 9th, 2013 "alleged Order" did  not constitute a lawful order
of the court or a legal mandate.   Plaintiff Leibovitz  reiterated that he didn't care what the
courts did with regards to setting the amount for bail, that he has the money and that even if
they set bail at $1 out of principle he wouldn't post it.  Plaintiff Leibovitz  argued that
defendant BARTOLOMEY kept slandering him and arguing a position based on telling the
story from chapter 3 as opposed to him,  who was arguing the position based on chapter 1.
Plaintiff Leibovitz  also put the court on notice that they were penalizing him once again by
setting bail  when they had no grounds too and for restricting his rights to call a public line.

86. On or about September 24, 2013, Defendant FERRARA granted the People's application
and reduced bail from remand to $10,000, insurance company bail bond, or $10,000 cash.

87. On or about September 24, 2013 Defendant FERRARA then discussed the new subpoena.

> **Judge Ferrara:**  Mr Altman the subpoena that was issued to Le Triomphe was
> issued erroneously.  There were defects.  I sent a letter, copied to you explaining
> what needs to be done to correct it.  You may present a subpoena to me at any time,
> in corrected version and I will sign it so you that can serve it on the building and get
> the necessary videotape.
>
> **Mr Altman:** I will do that, you Honor.  I have already prepared a new subpoena.

88. Defendant FERRARA concluded the hearing by warning Plaintiff Leibovitz not to call
Judge Edwards and her Court attorney while he is in jail and that Defendant FERRARA was
going to give Plaintiff Leibovitz an opportunity over the next two weeks to behave and if
Plaintiff Leibovitz did behave  at his next hearing Defendant FERRARA  would listen to his
application to lower the bail.   Court was adjourned for September 27, 2013.

89. On or about September 27, 2013 at the hearing  defendant BARTOLOMEY served the
People's supporting deposition of Ms. Gardner with Plaintiff Leibovitz.

90. On or about September 27, 2013 Defendant FERRARA dismissed another charge with Plaintiff Leibovitz's April 3rd, 2013 arrest of harassment in the 2nd degree.

91. On or about September 27, 2013 Judge Ferrara  then asked defendant BARTOLOMEY if she received any indication from defendant EDWARDS or Ms Gardner if there was any communication whatsoever with Plaintiff Leibovitz, either of them? defendant BARTOLOMEY stated no

92.  Plaintiff Leibovitz  then argued his position against the charges for his September 23, 2013 bench warrant arrest. Plaintiff Leibovitz read for the record the case of People v Pierre-Lewis and how the aforementioned case emulates his situation and how the Appellate court dismissed the case because the statute of Penal 240.30 in that situation violates Mr Pierre-Lewis's constitutional rights.

93. Defendant FERRARA then stated that a motion to dismiss on constitutional grounds must be made in writing and notice must be given to the Attorney General of the State of New York so they can weigh on it.

94. Defendant FERRARA concluded the hearing by stating that the next hearing, scheduled for October 4th, 2013, he would entertain an application of changing bail.

95. On or about October 4th , 2013 during the hearing Plaintiff Leibovitz finally received his most important evidence that would exonerate me, the Building video recording.

96. Defendant FERRARA then asked  defendant BARTOLOMEY once again if there was any contact between Plaintiff Leibovitz and Ms Gardner. Defendant BARTOLOMEY stated none that she is aware of.

97. Defendant FERRARA then asked Plaintiff Leibovitz if he wanted to make a bail application for  which he responded:

> **Mr Leibovitz:**  You said you would reduce it to zero is that correct?
>
> **Judge Ferrara:** I said I would entertain a bail application from you, but I will have to hear you on it, or do you prefer staying in custody during of the course of the trial?
>
> **Mr Leibovitz:**  I am making a bail application.  I haven't contacted the judge, or her lawyer and I don't plan to.
>
> **Judge Ferrara:**  Okay.  The current bail on your case is 10,000 bond or cash on each case.  I am looking favorably.  I will reduce the cash alternative on the second

case, and allow you to pay it in cash or credit card. Under the procedures of the court
I can reduce it down to $2500.   Can you afford to do that?

**Mr Leibovitz:**  Can I ask the reason 2500 not zero?  You told me if I don't speak to
the lawyer you will reduce it down to zero.

**Ms Bartolomey:**  Your Honor may I be heard before your Honor makes a decision?

**Judge Ferrara:**  Yes First talking to the DA and then I will respond to you. Go
ahead.

**Ms. Bartolomey:**  Your Honor, the People ask that bail conditions remain the same
at this time.  Although it's true Mr Leibovitz has not contacted Ms. Gardner, that's
only because he was in custody.  I am sure he does not have her name listed----

**Mr Leibovitz:**  (646) 386 -4678

**Ms Bartolomey:**  I stand corrected if that's her number.

**Judge Ferrara:**  Obviously he knows the number.

98. Once again defendant BARTOLOMEY kept arguing THE PEOPLE's  case based on
    frivolous assertions.  First off  Plaintiff Leibovitz knew the number by heart and if he really
    wanted to call he  could have used another inmates phone line to call a friend to get the
    Judge's  number.

99. On or about October 4th, 2013 Mr Altman posted bail for Plaintiff Leibovitz because
    Plaintiff Leibovitz refused to post bail out of principle.

100. On or about and between October 4th to October 7th , in the early morning , Plaintiff
     Leibovitz worked with Mr Altman and by himself to prepare for trial that was scheduled for
     October 7th, 2013.  Plaintiff Leibovitz meticulously broke down video frames of the building
     arrest video.  Plaintiff Leibovitz prepared his case in chief,  direct and cross examination
     questions, voir dire questions, opening statement, , and outlined his closing argument.
     Plaintiff Leibovitz also reviewed his August notes, YOUTUBE videos of court proceedings
     that he watched prior to the bench warrant arrest and criminal law hand guide.

101. Plaintiff Leibovitz spent all weekend preparing for his trial but the false arrest and
     imprisonment as well as defendant FERRARA's unlawful order from August 9th, 2013 was
     affecting him so on or about October 7, 2013 at 3:00 am,  Plaintiff Leibovitz prepared notes
     for his Oral Motion for Continuance.  Plaintiff Leibovitz had a gut feeling that defendant

FERRARA was going to deny his Motion for Continuance so Plaintiff Leibovitz prepared a written Motion to Recuse defendant FERRARA.

102. On or about October 7, 2013, Plaintiff Leibovitz requested the Court to be heard for a Motion for Continuance for which defendant FERRARA denied the motion. Plaintiff Leibovitz asked defendant FERRARA on what grounds he was denying the motion.

103. Plaintiff Leibovitz then requested the Court to be heard on another motion, Motion to Recuse defendant FERRARA. Defendant FERRARA denied that motion as well.

104. Defendant FERRARA was about to commence the hearing when Plaintiff Leibovitz stated in open court that defendant FERRARA forced his hands and that he is relinquishing his PRO SE rights and that Mr. Altman was going to take over as lead counsel.

105. Mr Altman took over and requested more time to prepare for trial for which defendant FERRARA granted Mr Altman another month to prepare.

Plaintiff Leibovitz just smiled at defendant FERRARA because Plaintiff Leibovitz knew that whatever happened with his criminal trial he was going to file a Notice of Appeal and argue all the prejudicial errors. On August 9, 2013 defendant FERRARA stated

**Judge Ferrara: I 'm going to give you enough time to prepare the case.**

Such wasn't the case.

106. On or about October 7, 2013, Mr. Altman served defendant BARTOLOMEY with Plaintiff Leibovitz's exculpatory evidence:

    a.  Building video recording from the April 3rd, 2013 arrest

    b.  Mr. Leibovitz's cell phone video recording of the police prior to the arrest and during the arrest

    c.  Mr Leibovitz's cell phone video recording on April 3, 2013 conversation with the building doorman acknowledging

        i.  Plaintiff Leibovitz called 911 first

        ii.  March 16th, 2013 process service mishap by the building

        iii.  Plaintiff Leibovitz caused no problems and his apology to Plaintiff Leibovitz.

107. On or about November 7th, 2013 after having a month to review Plaintiff Leibovitz's exculpatory evidence, Defendant BARTOLOMEY still prosecuted the case.

108. On or about November 7, 2013 Plaintiff Leibovitz decided he was going to enjoy watching our Judicial System at work now during trial.

109. On or about November 19, 2013 Plaintiff Leibovitz was convicted and sentence hearing was scheduled for December 16, 2013.

110. On or about and between November 20, 2013 to December 10, 2013 while incarcerated, Plaintiff Leibovitz was at the law library reviewing post-conviction relief: 330.30 and 440.10 motions.

111. On or about and between December 4, 2013 to December 8, 2013 Plaintiff Leibovitz prepared a letter to the courts requesting to adjourn the sentencing date so that he could get all the minutes to prepare a 330.30 Motion. Plaintiff Leibovitz spoke to Mr Altman and asked him to file the letter as soon as possible. Mr. Altman said that wouldn't be necessary because he would give the letter to the courts on December 16, 2013 on our next court appearance. Plaintiff Leibovitz questioned Mr. Altman why not file it now.

112. On or about December 16, 2013 the court adjourned the sentencing hearing to the following day, the 17th of December, and then once again adjourned the sentencing hearing to December 30, 2013

113. On or about December 9, 2013 Mr Altman filed and served by Notice of Motion to dismiss the September 23, 2013 misdemeanor complaint.

114. On or about December 30, 2013 defendant FERRARA denied Plaintiff Leibovitz an extension to file a 330.30 motion. Defendant FERRARA stated Plaintiff Leibovitz had enough time to file this motion. Plaintiff Leibovitz told the courts he prepared an adjournment letter back on or about December 6th, 2013 and that Mr. Altman failed to file the letter with the courts. Plaintiff Leibovitz had enough of Kangaroo Court and defendant FERRARA's abuse of power and protested that this was abuse of power.

115. Defendant FERRARA tried to silence Plaintiff Leibovitz during allocution through the use of force with court officers. Court officer badge # 3222 assaulted Plaintiff Leibovitz and

dragged Plaintiff Leibovitz down to the holding cell and as a result Plaintiff Leibovitz was diagnosed with handcuff neotrophy. ( A claim has been filed with the Comptroller)

116. Plaintiff Leibovitz was then brought back into court to be sentenced. Plaintiff Leibovitz once again asked defendant FERRARA on what grounds he was denying his constitutional right to file this motion. Defendant FERRARA stood up in open court and stated " BECAUSE I AM THE JUDGE!!!!!", or words to that effect.

117. On or about January 10, 2014, the People served and filed their Response to Mr Altman's Notice of Motion.

118. On or about mid-January , 2014 Mr Altman filed a Notice of Appeal for Plaintiff Leibovitz.

119. On or about January 31, 2014, defendant FERRARA issued his Decision and Order with regards to Mr Altman's Notice of Motion and dismissed the charge of Criminal Contempt in the 2nd Degree. Aggravated Harassment in the Second Degree pursuant to Penal Law 240.30[1][a] was not dismissed because "the Court of Appeals has found that the Aggravate Harassment in the Second Degree statute limits a person's right to free speech in a permissible manner subordinate "to the recipient's right to be free of unwanted telephone calls." (People v Shack, 86 NY2d 529, 536 [1995]). This Trial court has failed to understand that in People vs Shack, the case is with regards to a situation where a right of privacy exists. Mr Shack the defendant , a resident from New York, called his first cousin, Diane Buffalin, , who is a psychologist who lives in Michigan on her home phone. Plaintiff Leibovitz called a public line, not Ms. Gardner's cell phone or home line. Furthermore all of Mr Leibovitz's calls had a purpose.

120. On or about January 31, 2014 Plaintiff Leibovitz felt vindicated that Criminal Contempt was dismissed.

121. On or about March 7, 2014, Plaintiff Leibovitz was released from Rikers after doing a four month "BID". The first thing Plaintiff Leibovitz did was go home and participate in karaoke by singing the song "WE ARE THE CHAMPIONS" by QUEEN so that he could recite the lyrics –

I've paid my dues -
Time after time -

> I've done my sentence
> But committed no crime -
> And bad mistakes
> I've made a few
> I've had my share of sand kicked in my face -
> But I've come through
> We are the champions - my friends
> **And I'll keep on fighting - till the end –**

122. On or about the end of March, Plaintiff Leibovitz filed a 65 page Motion to Dismiss the last charge, Penal Law 230.40 (1) Aggravate Harassment in the Second degree , based on CPL 170.30 , CPL 170.35 and CPL 170.40.

123. On or about March 23, 2014 Plaintiff Leibovitz filed a complaint with NY State Commission on Judicial Conduct with regards to defendants FERRARA and EDWARDS.

124. Plaintiff's Leibovitz next court date is scheduled for April 28, 2014 where trial is scheduled to begin. Defendant BARTOLOMEY is scheduled to be the prosecutor for this case as well. Plaintiff Leibovitz is having Mr Altman removed for ineffective counseling.

125. Plaintiff Leibovitz watched the Judicial System:

    a.  First deny him his constitutional rights to conduct his own defense.

    b.  A judge use court officers to intimidate him when he stood up for his rights

    c.  A judge imprison him to an incompetent 18B lawyer who put his evidence at risk by filing an unenforceable subpoena.

    d.  18B lawyer who failed to stand up for Plaintiff Leibovitz Constitutional Rights.

    e.  When Plaintiff Leibovitz fought for his rights, his First Amendment rights were suppressed and he was then forbidden and penalized from exercising them when the judge should have been reprimanded instead.

    f.  Bench Warrant issued for his arrest due to the incompetence of two Judges and their abuse of power.

    g.  An ADA slander his name, manipulate the evidence, prepare the People's witnesses in order to get a conviction as opposed to seeking justice and the truth.

    h.  18B lawyer failure to put in post-conviction relief.

    i.  18B lawyer fail to serve the 2nd most important witness the doorman.

    j.  A judge stand up in court and state "Because I am the Judge"

## FIRST CLAIM VIOLATION OF FIFTH, SIXTH AND FOURTEENTH AMENDMENT RIGHT

126. Plaintiff Leibovitz repeats and re-allege the allegations and averments of paragraphs 1-125 as if fully set forth herein.

127. The Sixth and Fourteenth Amendment of our Constitution guarantee that a person brought to trial in any state or federal court must be afforded the right to the assistance of counsel before he can be validly convicted and punished by imprisonment. The clear constitutional rule has emerged from a series of cases decided here over the last 50 years.  The question before us now is whether a defendant in a state criminal trial has a constitutional right to proceed *without* counsel when he voluntarily and intelligently elects to do so.  Stated another way, the question is whether a State may constitutionally hale a person into its criminal courts and there force a lawyer upon him, even when he insists that he wants to conduct his own defense.  It is not an easy question, but we have concluded that a State may not constitutionally do so.

128. The above paragraph are the words that  were delivered in the opening paragraph by Mr. Justice Stewart  in the opinion of the United States Supreme Court in Faretta v. California, 422 U.S. 806, 95 S. Ct. 2525 (1975).

129. By reason of the foregoing paragraphs 19-40, and by coercion, intimidation,  duress through the use of Court Officers, defendant EDWARDS deprived and denied Plaintiff Leibovitz the right to go PRO SEE and to conduct his own defense, remedies, privileges, and immunities guaranteed to every person, secured by Title 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by the Fifth,  Sixth and Fourteenth Amendment to the United States Constitution.  Defendant EDWARDS acted under pretense and color of state law and within the scope of her employments as Judge in Criminal Court in the city of New York, County of New York.

## SECOND CLAIM VIOLATION OF FIRST, FIFTH, EIGHTH AND FOURTEENTH AMENDMENT RIGHT

130. Plaintiff Leibovitz repeats and re-alleges the allegations and averments of paragraphs 1-129 as if fully set forth herein.

131. "A principal 'function of free speech under our system of government is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger.' " Id. at 408-09, 109 S.Ct. 2533 (quoting Terminiello v. Chicago, 337 U.S. 1, 4, 69 S.Ct. 894, 93 L.Ed. 1131 (1949)).

132. On August 7th, 2013, Plaintiff  Leibovitz applied this principal when he called court attorney, Ms Gardner after his second pro se application was denied by defendant EDWARDS on July 24, 2013.   On that day,   Plaintiff Leibovitz exercised his First Amendment right when he induced a condition of unrest due to his dissatisfaction with defendant EDWARDS violating and interfering with his Due Process and Constitutional right to conduct his own criminal defense.  Although Plaintiff Leibovitz was not arrested for these actions,  three things did emerge August 9th, 2013 as a result.

    a) Judge Edwards recused herself
    b) The case was assigned to defendant FERRARA who accepted Plaintiff Leibovitz's Pro Se application.
    c) Defendant FERRARA penalized Plaintiff Leibovitz by "allegedly ordering" and forbidding him to call defendant EDWARDS and her court attorney Ms. Gardner.

133. Defendant FERRARA applied negative punishment, an important concept in B.F. Skinner's theory of operand conditioning by punishing Plaintiff Leibovitz in order to decrease the behavior that precedes it.  In this case of negative punishment, it involves taking something good or desirable away ( right to call a public office)  in order to reduce the occurrence of a particular behavior.  The question here is did defendant FERRARA have the right to do this? On August 7th, 2013, Plaintiff Leibovitz  never used any proscribed speech when he called Ms Gardner.  As for the right to privacy, Plaintiff  Leibovitz's calls to Ms Gardner were to  a public phone line

134. Speech is often "abusive" -- even vulgar, derisive, and provocative -- and yet it is still protected under the State and Federal constitutional guarantees of free expression unless it is much more than that. Casual conversation may well be "abusive" and intended to "annoy"; so, too, may be light-hearted banter or the earnest expression of personal opinion or emotion. But unless speech presents a clear and present danger of some serious substantive evil, it may neither be FORBIDDEN nor PENALIZED, People v. Dietze 75 N.Y. 2d 47 (1989).

135. By reason of the foregoing paragraphs 46-125, and by coercion, intimidation, duress and force through the use of Court Officers, defendant FERRARA deprived Plaintiff Leibovitz of rights, remedies, privileges, and immunities guaranteed to every person, secured by Title 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by the First, Fifth, Eighth and Fourteenth Amendment to the United States Constitution. Defendant FERRARA acted under pretense and color of state law and within the scope of his employments as Judge in Criminal Court in the city of New York, County of New York.


## THIRD CLAIM VIOLATION OF FOURTH, FIFTH AND FOURTEENTH AMENDMENT

136. Plaintiff Leibovitz repeats and re-alleges the allegations and averments of paragraphs 1-135 as if fully set forth herein.

137. Judiciary Law Section 466 entitled" Attorney's Oath of Office", states in relevant part that: Each person, admitted as prescribed in this chapter must, upon his [or her} admission, take the constitutional oath of office in open court, and subscribe the same in a roll or book to be kept in the office of the clerk of the appellate division of the supreme court for that purpose.

The text of the oath is set forth in Section 1 of Article XIII of the New York Constitution

I do solemnly swear (or affirm) that I will support the constitution of the United States, and the constitution of the State of New York, and that I will faithfully discharge the duties of the office (attorney and counselor-at-law), according to the best of my ability.

Defendant BARTOLOMEY , a graduate from Columbia University School of Law, took the above aforementioned oath in 2012, a pledge of such gravity and importance that

the Legislature has seen fit to require that it be administered orally in a public court proceeding and to provide that the taking of the oath and the assumption of its obligation be evidenced by the newly admitted attorney's signature in a book specially kept for that purpose.  The administration of the oath takes less than  one minute, but its obligations endure for the life of the attorney's career at the bar.

138. Prosecutorial misconduct is more widespread than the numbers indicate, but it's nearly impossible to police lawyers who would sacrifice justice for convictions.

139. Such is the case with defendant BARTOLOMEY who slandered Plaintiff Leibovitz before trial and during trial , prepared the People's Witnesses in advance, and  looked the other way when two Police Officer's committed perjury when Plaintiff Leibovitz exculpatory evidence showed otherwise.

140. Defendant BARTOLOMEY was a witness on May 28, 2013 and on July 24, 2013 when Plaintiff Leibovitz's  Constitutional rights were violated by Defendant EDWARDS, yet on September 23, 2013 and September 24, 2013, defendant BARTOLOMEY argued that Plaintiff Leibovitz has been disrespectful of the courts from day one and bail should be set.

141. Plaintiff Leibovitz was deprived, and continues to be deprived, by defendant BARTOLOMEY the right to  due process of law, a right to a fair trial, a right to be secure in his own house.

142.  PART 1200 RULES OF PROFESSIONAL CONDUCT  RULE 3.8.

Special Responsibilities of Prosecutors and Other Government Lawyers

(a) A prosecutor or other government lawyer shall not institute, cause to be instituted or maintain a criminal charge when the prosecutor or other government lawyer knows or it is obvious that the charge is not supported by probable cause.

(b) A prosecutor or other government lawyer in criminal litigation shall make timely disclosure to counsel for the defendant or to a defendant who has no counsel of the existence of evidence or information known to the prosecutor or other government lawyer that tends to negate the guilt of the accused, mitigate the degree of the offense, or reduce the sentence, except when relieved of this responsibility by a protective order of a tribunal.

(c) When a prosecutor knows of new, credible and material evidence creating a reasonable likelihood that a convicted defendant did not commit an

offense of which the defendant was convicted, the prosecutor shall within a
reasonable time:  (1) disclose that evidence to an appropriate court or
prosecutor's office; or (2) if the conviction was obtained by that prosecutor's
office,  (A) notify the appropriate court and the defendant that the prosecutor's office
possesses such  evidence unless a court authorizes delay for
good cause shown; (B) disclose that evidence to the defendant unless
the disclosure would interfere with an ongoing investigation or endanger the safety of a
witness or other person, and a court authorizes delay for
good cause shown; and  undertake or make reasonable efforts to cause to
be undertaken such further inquiry or investigation as may be necessary to provide a
reasonable belief that the conviction should or should not be set aside.
(d) When a prosecutor knows of clear and convincing evidence establishing
that a defendant was convicted, in a prosecution by the prosecutor's office, of an
offense that the defendant did not commit, the prosecutor shall seek a remedy
consistent with justice, applicable law, and the circumstances of the case.
(e) A prosecutor's independent judgment, made in good faith, that the new
evidence is not of such nature as to trigger the obligations of sections (c) and (d),
though subsequently determined to have been erroneous, does not constitute a
violation of this rule.


143. The experts say the best approach to policing prosecutorial abuse would be for state bar
associations to investigate and act firmly against the licenses of prosecutors who abuse their
discretion. Unfortunately, lawyers are not very good at upholding the ethics of their own
profession. According to the study, only two prosecutors have faced disbarment for their
misconduct in the last 33 years. Prosecutors who knowingly hold back evidence of innocence
from the defense or willingly used faulty witness testimony know they have little worry that
they will be called to account.

144.  By reason of the foregoing paragraphs 19-125,  defendant BARTOLOEMY deprived Plaintiff Leibovitz of rights, remedies, privileges, and immunities guaranteed to every person, secured by 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Defendant BARTOLOMEY acted under pretense and color of state law and within the scope of her employments as Assistant District Attorney.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays this Court issue equitable relief as follows:

1. Issue injunctive relief prohibiting defendant BARTOLOEMY from prosecuting against Plaintiff Leibovitz for docket 2013NY072941.
2. Issuing an order that all three defendants review PART 1200  RULES OF PROFESSIONAL CONDUCT and allow Plaintiff Leibovitz to conduct the exam.
3. Declare that the conduct of Judge Erika Edwards as described above, violates the rights of Plaintiff Leibovitz's, under the Fifth, Sixth and Fourteenth Amendment to the Constitution of the United States and New York State Constitution;
4. Declare that the conduct of Judge Anthony Ferrara as described above, violates the rights of Plaintiff Leibovitz's, First, Fifth, Eighth and Fourteenth Amendment to the Constitution of the United States and New York State Constitution;
5. Declare that the conduct of ADA Francesca Bartolomey as described above, violates the rights of Plaintiff Leibovitz's, Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States and New York State Constitution;
6. Retain jurisdiction in this case until the unlawful conditions, practices, policies, acts, complained of herein, including the unconstitutional use of force practice by court officers, no longer exist and this court is satisfied that they will not recur;
7. Award plaintiff his costs of litigation;
8. Pro Se fees, costs and expenses 42 U.S.C. § 1988 and any other applicable authority; and

Grant such other and further relief in favor of the Plaintiff as this Court deems just and proper.

Dated: April 22, 2014
Queens, New York

Respectfully Submitted,

Etan Leibovitz
Plaintiff
83-19 141 st #207
Briarwood, New York 11435
Cell: (646)-326-0899

Statement of Verification


Etan Leibovitz, being duly sworn deposes and says:

I am the plaintiff in the above-entitled action.  I have read the foregoing complaint and know the contents thereof.

The same are true to my knowledge, except as to matters therein stated to be alleged on information and belief and as to those matters I believe them to be true.

_____

Plaintiff

Etan Leibovitz


Sworn to before me this

22nd day of April 2014

_____

Notary Public

PATRICIA E. LASAK
Notary Public, State of New York
No. 04LA6232541
Qualified in Queens County
Commission Expires December 13, 20__18

AddressesJudgesADA

Attorney Complained of:
Ms.  Bartolomey, Fransecasa
Address:  1 Hogan Place, New York, New York 10013
Telephone: DA's Office (212) 335-9000


Hon. Erika Edwards
New York City Criminal Court, New York County
100 Centre Street
New York, NY 10013
(646) 386-4668


Hon. Anthony J. Ferrara
New York County Criminal Court
100 Centre Street
New York, NY 10013
(646) 386-4652
Judicial Offices