```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
ETAN LEIBOVITZ,                       :    14 Civ. 3297 (RA) (JCF)
                                      :
             Plaintiff,               :         REPORT AND
                                      :         RECOMMENDATION
                                      :
      - against -                     :
                                      :
THE CITY OF NEW YORK,                 :
                                      :
             Defendants.              :
- - - - - - - - - - - - - - - - - - -:
TO THE HONORABLE RONNIE ABRAMS, U.S.D.J.
```

The plaintiff, Etan Leibovitz, brings this action pro se pursuant to 42 U.S.C. § 1983 and state law against the City of New York (the "City") and Detective Marisa Valle of the New York Police Department(collectively, the "City defendants"); New York State Court Attorney Alana Gardner and New York State Court Officers Salvatore Rapaglia, Nicole Tusa, Brian Daley, and Lieutenant Angela Shirlaw (collectively, the "State defendants"); and New York County District Attorney Cyrus Vance, Jr. ("D.A. Vance").[1] Mr. Leibovitz alleges constitutional and state law violations arising out of two state criminal prosecutions. He seeks declaratory and injunctive relief and a total of $178,000,000 in damages –- $60,000,000 in compensatory damages and $118,000,000 in punitive damages.

D.A. Vance has moved to dismiss the claim against him for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The State defendants have moved to

_____

[1] The plaintiff originally sued Judge Erika Edwards, Judge Anthony Ferrara, and Assistant District Attorney ("A.D.A.") Francesca Bartolomey, but all claims against those defendants were dismissed sua sponte. (Order dated July 8, 2014).

1

dismiss all claims against them, insofar as they are sued in their official capacities, for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, and to dismiss claims six through eighteen, twenty, and twenty-two through twenty five, in their entirety, and claim twenty-one, in part, for failure to state a claim under Rule 12(b)(6).[2]

Background[3]

In March 2013, Mr. Leibovitz filed a lawsuit in New York State Supreme Court, New York County, against two former business partners, Charles Poliacof and Robert Stepeck.  (Second Amended Complaint ("2nd Am. Compl."), ¶ 143).  After Mr. Leibovitz had difficulty effectuating service, he went to Mr. Poliacof's home on April 3, 2013, to verify that he had the correct address.  (2nd Am. Compl., ¶¶ 151–156).  While there, Mr. Leibovitz was arrested; he was charged with aggravated harassment in the second degree, criminal trespass in the second degree, resisting arrest, and harassment in the second degree.  (2nd Am. Compl., ¶ 166).  He was arraigned in the Criminal Court of the City of New York on April 4, 2013, and the case was adjourned to May 28, 2013.  (2nd Am. Compl., ¶ 167).  A.D.A. Francesca Bartolomey prosecuted the criminal charges against the plaintiff.  (2nd Am. Compl., ¶ 172).

On May 28, 2013, Judge Erika Edwards denied Mr. Leibovitz's

---

[2] The City defendants have also filed a motion to dismiss (Docket no. 78), which will be addressed separately.

[3] In accordance with the standard for assessing a motion to dismiss, the following facts are derived from the allegations in Mr. Leibovitz's Second Amended Complaint and are taken as true for purposes of these motions only.

request to proceed pro se and appointed an attorney, Stuart Altman, to represent him. (2nd Am. Compl., ¶ 175). At some point in June or July 2013, Mr. Leibovitz called Ms. Gardner, Judge Edwards' court attorney, and expressed concern about Judge Edwards' denial of his pro se application. (2nd Am. Compl., ¶¶ 185, 187). On August 7, 2013, Judge Edwards denied Mr. Leibovitz's second application to proceed pro se. (2nd Am. Compl., ¶ 192). Later that day, Mr. Leibovitz again called Ms. Gardner, who informed Mr. Leibovitz that she could not speak with him. (2nd Am. Compl., ¶ 198). After Ms. Gardner hung up, Mr. Leibovitz called back repeatedly and left several messages in which he "used profanity to express his dissatisfaction" with Ms. Gardner and Judge Edwards. (2nd Am. Compl., ¶¶ 198-205).

On August 9, 2013, Judge Edwards recused herself and Mr. Leibovitz's case was reassigned to Judge Anthony Ferrara. (2nd Am. Compl., ¶ 208). Judge Ferrara granted Mr. Leibovitz's application to proceed pro se, with Mr. Altman to stay on as Mr. Leibovitz's legal advisor to assist with matters such as composing subpoenas. (2nd Am. Compl., ¶¶ 215, 221). During the same hearing, Judge Ferrara ordered Mr. Leibovitz not to contact Judge Edwards or Ms. Gardner further and instructed him that all communications with the Court must be in writing. (2nd Am. Compl., ¶ 213). Mr. Leibovitz acknowledged that he understood Judge Ferrara's instructions. (2nd Am. Compl., ¶ 213).

In preparation for trial, Mr. Leibovitz sought to subpoena any video of his arrest. (2nd Am. Compl., ¶¶ 219-222). However, his

first subpoena, composed by Mr. Altman and signed by Judge Edwards prior to her recusal, contained an error. (2nd Am. Compl., ¶¶ 219-220). On August 28, 2013, after Mr. Altman directed Mr. Leibovitz to file a second subpoena on his own, Mr. Leibovitz called Judge Ferrara and his court attorney, Mr. Schmidt, but was informed that they were on vacation. (2nd Am. Compl., ¶¶ 221, 223). On September 3, 2013, still unable to reach either Judge Ferrara or Mr. Schmidt, Mr. Leibovitz telephoned Ms. Gardner to request that Judge Edwards sign a new subpoena. (2nd Am. Compl., ¶¶ 225-226). Ms. Gardner would not speak to Mr. Leibovitz. (2nd Am. Compl., ¶ 226). Upset, Mr. Leibovitz called again, informed Ms. Gardner that he was going to file a civil lawsuit, and asked how to spell her name, Judge Edwards' name, and various court officers' names. (2nd Am. Compl., ¶ 227). Ms. Gardner reported Mr. Leibovitz's calls to A.D.A. Bartolomey. (2nd Am. Compl., ¶ 228). On September 9, 2013, at A.D.A. Bartolomey's request, Judge Neil E. Ross issued a bench warrant for Mr. Leibovitz for violating Judge Ferrara's order to not contact Judge Edwards or Ms. Gardner. (2nd Am. Compl., ¶¶ 230-231).

Sometime after September 9, 2013, Detective Valle called Mr. Leibovitz and informed him of the bench warrant. (2nd Am. Compl., ¶¶ 233-234). Detective Valle was unable to answer questions about the warrant to Mr. Leibovitz's satisfaction and suggested he "come down to [her] office [and] appear in court to resolve the matter." (2nd Am. Compl., ¶ 236). Mr. Leibovitz refused. (2nd Am. Compl., ¶ 242). He then called Ms. Gardner on September 13, 2013, to ask

4

if she was responsible for the bench warrant. (2nd Am. Compl., ¶ 250).

On September 20, 2013, Detective Valle signed an arrest affidavit and submitted a misdemeanor complaint charging Mr. Leibovitz with one count of aggravated harassment in the second degree and one count of criminal contempt in the second degree (2nd Am. Compl., ¶ 258); Ms. Gardner was the complaining witness (2nd Am. Compl., ¶¶ 29, 298, 506). A misdemeanor arrest warrant was issued. (2nd Am. Compl., ¶ 258). On September 23, 2013, Mr. Leibovitz was arrested[4] and arraigned and pled not guilty. (2nd Am. Compl., ¶¶ 272, 274). Mr. Leibovitz was re-arraigned on September 24 in front of Judge Ferrara and bail was set at $10,000. (2nd Am. Compl., ¶¶ 284, 288). The same day, Ms. Gardner reviewed the misdemeanor complaint submitted by Detective Valle, clarified several details about Mr. Leibovitz's calls and voicemail messages, and signed a supporting affidavit. (2nd Am. Compl., ¶¶ 293, 298). On October 4, 2013, Mr. Leibovitz's bail was reduced and posted, and he was released from custody. (2nd Am. Compl., ¶ 300).

On November 19, 2013, Mr. Leibovitz was convicted of aggravated harassment in the second degree after a jury trial in his initial criminal case. (2nd Am. Compl., ¶ 315). He appeared

---

[4] The plaintiff alleges he was arrested twice on September 23, 2013, first by four officers executing the bench warrant, who arrested and transported him to Manhattan (2nd Am. Compl., ¶¶ 270-271), and then by Detective Valle executing the misdemeanor arrest warrant (2nd Am. Compl., ¶ 272; (Plaintiff's Memorandum of Law Opposing Defendants New York State Court Attorney Alana Garner, New York State Court Officers Brian Daley, Salvatore Rapaglia, Nicole Tusa and Lieutenant Angela Shirlaw's Motion to Dismiss ("Pl. State Memo.") at 81).

before Judge Ferrara for sentencing on December 30, 2013. (2nd Am. Compl., ¶¶ 323-334). After Judge Ferrara denied Mr. Leibovitz's request for an adjournment (2nd Am. Compl., ¶¶ 337-338), Mr. Leibovitz became upset, and Judge Ferrara instructed court officers to silence him (2nd Am. Compl., ¶¶ 337-338). Officers Daley and Rapaglia surrounded Mr. Leibovitz and told him to be quiet. (2nd Am. Compl., ¶¶ 338, 340). When Mr. Leibovitz refused, Officer Rapaglia "dragged" him from the courtroom. (2nd Am. Compl., ¶¶ 341, 343). Outside the courtroom, Officer Rapaglia pulled Mr. Leibovitz's ear while stating he would "show [Mr. Leibovitz] who is boss." (2nd Am. Compl., ¶¶ 344-46). Officers Tusa and Daley were present during this exchange. (2nd Am. Compl., ¶ 347). Officers Rapaglia and Daley then escorted Mr. Liebovitz downstairs to the Department of Correction bullpen, "forcing Mr. Leibovitz to walk down the stairs sideways and sometimes 'slightly backwards.'" (2nd Am. Compl., ¶ 349). Mr. Leibovitz "screamed in agony" as a result of a swollen left wrist, a lack of sensation in his thumb area, and throbbing in his right ear. (2nd Am. Compl., ¶¶ 353-354). He spoke with several correction officers and requested to see a doctor. (2nd Am. Compl., ¶¶ 355-356).

When Officer Rapaglia returned a few minutes later to take Mr. Leibovitz back upstairs, Mr. Leibovitz said he could not feel his hand, the two argued, and Officer Rapaglia left. (2nd Am. Compl., ¶¶ 357-364). Approximately ten minutes later, Officers Daley and Rapaglia brought Mr. Leibovitz back to the courtroom (2nd Am. Compl., ¶¶ 368-369), where he was sentenced to a six-month term of

imprisonment (2nd Am. Compl., ¶ 376). After the hearing concluded, Officers Daley and Rapaglia escorted Mr. Leibovitz downstairs to the bullpen. (2nd Am. Compl., ¶¶ 377, 379). Mr. Leibovitz demanded medical treatment, and a dispute arose as to whether providing him care was the responsibility of the Unified Court System or the Department of Correction. (2nd Am. Compl., ¶¶ 378, 380). Officers Daley and Rapaglia went to find their supervisor, Lieutenant Angela Shirlaw, returning with her after approximately ten minutes. (2nd Am. Compl., ¶¶ 382, 386). The Department of Correction provided Mr. Leibovitz with medical care later that day, which included x-raying and bandaging his left hand. (2nd Am. Compl., ¶¶ 394-398). At a subsequent medical appointment on January 9, 2014, he was diagnosed with "handcuff neuropathy." (2nd Am. Compl., ¶¶ 399-402). By August 2014, Mr. Leibovitz's hand had completely healed. (2nd Am. Compl., ¶ 418).

On January 31, 2014, a hearing in Mr. Leibovitz's second criminal case was held before Judge Ferrara. (2nd Am. Compl., ¶ 405). At that time, Judge Ferrara dismissed the charge of criminal contempt in the second degree. (2nd Am. Compl., ¶ 405). On May 13, 2014, the New York Court of Appeals held unconstitutional the section of the New York Penal Law pertaining to the charge of aggravated harassment in the second degree. (2nd Am. Compl., ¶ 414 (citing People v. Golb, 23 N.Y.3d 455, 466-68, 991 N.Y.S.2d 792, 800-01 (2014) (finding § 240.30(1) unconstitutional)). As a result, on May 19, 2014, the remaining charge of aggravated harassment was dropped and Mr. Leibovitz's second criminal case was

7

dismissed.  (2nd Am. Compl., ¶ 416).

Mr. Leibovitz commenced this action on April 24, 2014.  In the Second Amended Complaint, he alleges twenty-five causes of action, including state and federal constitutional violations for deprivation of free speech, false imprisonment, false arrest, malicious prosecution, and malicious abuse of process; federal constitutional violations for use of excessive force, deliberate indifference to medical needs, and failure to intervene; and state law claims for assault, battery, intentional and negligent infliction of emotional distress, and negligence.

Discussion

The defendants move to dismiss Mr. Leibovitz's claims on several grounds.  D.A. Vance moves to dismiss the claims against him pursuant to Rule 12(b)(6) on the grounds that the Second Amended Complaint fails to state a claim.  The State defendants seek dismissal of all claims against them pursuant to Rule 12(b)(1) on the grounds that, in their official capacities, they are protected by sovereign immunity.  Additionally, they move to dismiss claims six through eighteen, twenty, twenty-one (in part), and twenty-two through twenty-five for failure to state a claim upon which relief can be granted under Rule 12(b)(6).[5]  For the reasons set forth below, D.A. Vance's motion should be granted and

---

[5]  The State defendants have not moved to dismiss the plaintiff's nineteenth claim alleging use of excessive force by Officer Rapaglia or the twenty-first claim for failure to intervene against Officers Daley and Tusa, insofar as it relates to the claim of excessive force by Officer Rapaglia.  (Reply Memorandum of Law in Further Support of New York State Defendants' Motion to Dismiss in Part ("State Def. Reply") at 1 n.1).

the State defendants' motion should be granted in part and denied in part.

A.    Subject Matter Jurisdiction

A motion to dismiss a claim for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure must be granted "when the district court lacks the statutory or constitutional power to adjudicate [the case]." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). The existence of subject matter jurisdiction is a threshold inquiry; a court "must decide a Rule 12(b)(1) motion before any other motion to dismiss because a court may not act if it lacks jurisdiction." Dixon v. United States, No. 13 Civ. 2193, 2014 WL 23427, at *3 (S.D.N.Y. Jan. 2, 2014).

"A claim that is barred by a state's sovereign immunity must be dismissed pursuant to the Eleventh Amendment for lack of subject matter jurisdiction." Morales v. New York, 22 F. Supp. 3d 256, 268 (S.D.N.Y. 2014); see also Leitner v. Westchester Community College, 779 F.3d 130, 134 (2d Cir. 2015). Here, the plaintiff's damage claims against the State defendants and D.A. Vance[6] in their official capacities are barred by the Eleventh Amendment. See Edelman v. Jordan, 415 U.S. 651, 662-63 (1974); Will v. Michigan Department of State Police, 491 U.S. 58, 66 (1989); Gollomp v.

---

[6] Although D.A. Vance does not raise Eleventh Amendment immunity in his motion, I may consider the issue sua sponte. Atlantic Healthcare Benefits Trust v. Googins, 2 F.3d 1, 4 (2d Cir. 1993) ("[W]e raise [the Eleventh Amendment] sua sponte because it affects our subject matter jurisdiction."); Gray v. Internal Affairs Bureau, 292 F. Supp. 2d 475, 476 (S.D.N.Y. 2003).

Spitzer, 568 F.3d 355, 366 (2d Cir. 2009).  As officers of the New York State Unified Court System, the State defendants are protected from suit in their official capacities.  See Gollomp, 568 F.3d at 366 ("[E]very court to consider the question of whether the New York State Unified Court System is an arm of the State has concluded that it is, and is therefore protected by Eleventh Amendment sovereign immunity."); Qader v. New York, 396 F. Supp. 2d 466, 470 (S.D.N.Y. 2005)("[C]laims against . . . a court officer with the New York State Unified Court System[] are barred by the Eleventh Amendment.").  Indeed, the plaintiff concedes that his claims against the State defendants are barred insofar as they are sued in their official capacities.  (Pl. State Memo. at 97).  Similarly, "claims against the District Attorney in his official capacity . . . are construed as claims against the state and must be dismissed as barred by the Eleventh Amendment."  Eisenberg v. District Attorney of County of Kings, 847 F. Supp. 1029, 1035 (E.D.N.Y. 1994) (footnote omitted); see also Rodriquez v. Weprin, 116 F.3d 62, 66 (2d Cir. 1997); McFadden v. City of New York, No. 10 CV 1176, 2010 WL 1930268, at *1 (E.D.N.Y. May 11, 2010) ("The District Attorney's Office is an arm of the State of New York and thus any claims against it or its employees in an official capacity are barred by the doctrine of state sovereign immunity.").

Thus, I recommend that Mr. Leibovitz's fifth claim against D.A. Vance in his official capacity and sixth through twenty-fifth claims against the State defendants in their official capacities be

dismissed.[7]

   B.   Failure to State a Claim

   To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  While a complaint need not make "detailed factual allegations," it must contain more than mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action." Id. (quoting Twombly, 550 U.S. at 555).  A complaint with "'naked assertion[s]' devoid of 'further factual enhancement'" is insufficient.  Id. (alteration in original) (quoting Twombly, 550 U.S. at 557).  Further, where the complaint's allegations permit the court to infer only a possible, but not a plausible, claim for relief, it fails to meet the minimum standard.  Id. at 679.

   The court's task in ruling on a motion to dismiss "is merely

---

   [7] While the Eleventh Amendment allows official-capacity actions seeking prospective relief, Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 437 (2004), the plaintiff's claim for declaratory relief fails because it is retrospective, Green v. Mansour, 474 U.S. 64, 65-66 (1985) (holding that Eleventh Amendment and principles governing issuance of declaratory judgments prohibit award of declaration that state officials' prior conduct violated federal law).  His claim for injunctive relief fails because, even if he were to establish a past constitutional violation, he nevertheless fails to demonstrate a sufficient likelihood that he will be similarly wronged again.  See City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983); see also O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief [] if unaccompanied by any continuing, present adverse effects.").

to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." GVA Market Neutral Master Ltd. v. Veras Capital Partners Offshore Fund, Ltd., 580 F. Supp. 2d 321, 327 (S.D.N.Y. 2008) (quoting Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co. of New York, 375 F.3d 168, 176 (2d Cir. 2004)). In doing so, a court should construe the complaint in the light most favorable to the plaintiff, "taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor." Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009). However, this tenet "is inapplicable to legal conclusions" and a court is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

A pro se complaint must be considered under a more lenient standard than would be applied to "formal pleadings drafted by lawyers." Bellamy v. Mount Vernon Hospital, No. 07 Civ. 1801, 2009 WL 1835939 *3 (S.D.N.Y. June 26, 2009) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)). Even after Iqbal, a court should construe a pro se complaint "liberally and interpret it 'to raise the strongest arguments that [it] suggest[s].'" Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (alterations in original)(quoting Harris v. City of New York, 607 F.3d 18, 24 (2d Cir. 2010)). Nevertheless, proceeding pro se does not relieve a litigant of the minimum pleading requirements. Id. at 170. "[E]ven pro se plaintiffs asserting civil right claims cannot withstand a motion to dismiss unless their pleadings contain

factual allegations sufficient to raise a 'right to relief above the speculative level.'" <u>Jackson v. New York State Department of Labor</u>, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (quoting <u>Twombly</u>, 550 U.S. at 555).

     1.  <u>D.A. Vance</u>

The plaintiff seeks to hold D.A. Vance liable under § 1983 for violations of his "rights guaranteed by the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution to be free from false arrest, false imprisonment, confinement, malicious prosecution, right to a speedy trial, due process, Pro Se rights."[8] (2nd Am. Compl., ¶ 459). Specifically, he claims D.A. Vance is responsible for implementing and upholding an unconstitutional "conviction rate policy," failing to train and supervise, failing to adequately investigate subordinates' misconduct, and exhibiting "deliberate indifference [to] preventing false convictions." (2nd Am. Compl., ¶¶ 461, 470, 474). He claims D.A. Vance "is liable under the theory of being the final policymaker for the New York County District Attorney's Office," (Plaintiff's Memorandum of Law

---

    [8] While the plaintiff cites the Fifth and Sixth Amendments, he has made no identifiable claims for a violation of his rights thereunder. "The Fifth Amendment 'governs the conduct of the <u>federal</u> government and <u>federal</u> employees, and does not regulate the activities of state officials or state actors.'" <u>Cassidy v. Scoppetta</u>, 365 F. Supp. 2d 283, 286 (E.D.N.Y. 2005) (emphasis in original) (quoting <u>Dawkins v. City of Utica</u>, No. 93 CV 373, 1997 WL 176328, at *4 (N.D.N.Y. April 4, 1997). As a matter of law, therefore, the plaintiff cannot state a Fifth Amendment due process claim against the defendants. Additionally, beyond passing reference to deprivations of the plaintiff's "right to a speedy trial" and "Pro Se rights" (2nd Am. Compl., ¶ 459), the Second Amended Complaint contains no facts to support these purported constitutional violations.

Opposing Defendant D.A. Vance's Motion to Dismiss ("Pl. Vance Memo.") at 36). "To the extent that the plaintiff states [a] claim[] against the District Attorney in his capacity as a municipal policymaker, th[is] claim[] is against the City, rather than the District Attorney," Eisenberg, 847 F. Supp. at 1036 n.8, and is therefore not presently before the Court. However, the plaintiff's allegations could also be construed as asserting a claim for supervisory liability. Therefore, consistent with my obligation to liberally construe pro se pleadings, I will interpret the plaintiff's fifth claim as one of supervisory liability.

As a prerequisite to a damage award under § 1983, a plaintiff must allege that a defendant was personally involved in the alleged constitutional deprivation. Johnson v. Newburgh Enlarged School District, 239 F.3d 246, 254 (2d Cir. 2001). The Second Amended Complaint contains no factual allegations that D.A. Vance took part in -- or was even aware of -- Mr. Leibovitz's arrest or prosecution. As the defendant notes, respondeat superior liability is unavailable under § 1983. See Board of County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 403 (1997). However, direct participation is not always necessary to establish personal involvement; § 1983 provides for supervisory liability when there is a causal connection between a supervisor's actions and the alleged constitutional deprivation. Al-Jundi v. Estate of Rockefeller, 885 F.2d 1060, 1066 (2d Cir. 1989) (stating that direct participation is not required to establish personal involvement). Such a causal connection may be established by

14

showing that a supervisor learned of the violation but failed to take action, created or maintained a policy or custom that gave rise to the violation, was grossly negligent in the supervision of the subordinates who caused the violation, or was deliberately indifferent by failing to act on information suggesting a violation would occur. Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995); accord Johnson, 239 F.3d at 254.[9]

The plaintiff asserts that the D.A.'s Office has an unconstitutional conviction rate policy; however, the Second Amended Complaint provides no factual support for this allegation. The plaintiff points to (1) the D.A.'s Office website, which touts an increased conviction rate (2nd Am. Compl., ¶¶ 427, 462); (2) comments made by D.A. Vance describing the Queen's County District Attorney's Office as having the highest conviction rate in New York

---

[9] Courts have debated the extent to which the Colon standards for establishing a supervisory defendant's personal involvement remain viable after Iqbal. See Williams v. Koenigsmann, No. 14 Civ. 2498, 2015 WL 4393321, at *4 (S.D.N.Y. July 16, 2015) (describing debate and collecting cases). However, the Second Circuit recently explained that Colon's standards are consistent with Iqbal's pleading requirements to the extent that they support a theory of direct (as opposed to vicarious) liability. Turkmen v. Hasty, 789 F.3d 218, 250 (2d Cir. 2015), reh'g denied, __ F.3d __, 2015 WL 8593642 (2d Cir. Dec. 11, 2015). Accordingly, the Colon factors may still apply as long as the circumstances of the defendant's involvement satisfy the elements of the alleged constitutional tort. Id.; Lloyd v. City of New York, 43 F. Supp. 3d 254, 266 (S.D.N.Y. 2014) ("[W]here discriminatory intent is not an element of a constitutional claim, Colon remains the standard for establishing personal involvement by supervisory officials under 42 U.S.C. § 1983."); D'Olimpio v. Crisafi, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010) ("Colon's bases for liability are not founded on a theory of respondeat superior, but rather on a recognition that 'personal involvement of defendants in alleged constitutional deprivations' can be shown by nonfeasance as well as misfeasance." (quoting Colon, 58 F.3d at 873)).

City (2nd Am. Compl., ¶¶ 428, 463); and (3) "admissions" by D.A. Vance that innocent individuals are sometimes convicted of crimes (2nd Am. Compl., ¶ 469). These facts do not suggest that an unconstitutional policy exists; the only "policy" the plaintiff has identified is one governing the collection of statistical data. See Castillo v. Commissioner New York State Department of Correctional Services, No. 06-CV-858A, 2008 WL 4501881, at *2 (W.D.N.Y. Sept. 30, 2008) (dismissing complaint containing only conclusory reference to alleged unconstitutional policies).

To the extent the plaintiff contends that merely calculating or knowing an office's conviction rate constitutes a conviction rate policy (Pl. Vance Memo. at 43-44), he nevertheless fails to establish the requisite causal link between any such policy and the constitutional violations he allegedly suffered. He simply states that the policy prompted A.D.A. Bartolomey to procure an unlawful bench warrant (2nd Am. Compl., ¶ 466) and "provid[e] unlawful legal advice" to Detective Valle regarding the existence of probable cause to arrest him (2nd Am., ¶¶ 467-468, 471). Even if the plaintiff were able to establish an underlying constitutional violation, he must also demonstrate that the challenged policy was the moving force behind the violation, yet he provides no information as to how the policy motivates unconstitutional conduct. In fact, a policy prioritizing an office's conviction rate would arguably dissuade attorneys from pursuing unfounded cases -- the exact opposite of what the plaintiff appears to contend here.

16

Similarly, the Second Amended Complaint is devoid of any facts that would support a claim of supervisory liability predicated on failure to train and supervise, failure to investigate misconduct, or deliberate indifference.  The allegations that D.A. Vance "fail[ed] to prove adequate training and supervision on [the issue of the conviction rate policy]" (2nd Am. Compl., ¶ 461) and that "[i]t was the policy and/ or custom of Defendant VANCE to inadequately and improperly investigate defendant complaints of prosecutorial misconduct" (2nd Am. Compl., ¶ 474) are wholly conclusory, see Hardy v. City of New York, No. 12 Civ. 17, 2013 WL 5231459, at *5 (S.D.N.Y. July 9, 2013) (refusing to impose liability where plaintiff stated that supervisory defendant "'supervised' and 'approved' Plaintiff's arrest and the submission of false evidence, but d[id] not allege facts that show[ed] [defendant] supervising or approving anything") (internal citation omitted); Bridgewater v. Taylor, 832 F. Supp. 2d 337, 348 (S.D.N.Y. 2011) (noting that conclusory claims about supervisor's creation of policy or failure to provide training and supervision, absent facts showing personal involvement, are legally insufficient to state a claim under any of the Colon categories).  Vague and conclusory assertions that a supervisor failed to properly train or monitor subordinates do not establish the requisite personal involvement. See Styles v. Goord, 431 F. App'x 31, 33 (2d Cir. 2011) (summary order) (affirming dismissal where plaintiff "did not allege, or submit evidence demonstrating, any facts concerning [defendants'] particular conduct in supervising their subordinates"); Pettus v.

Morgenthau, 554 F.3d 293, 300 (2d Cir. 2009) (characterizing as "insufficient" failure-to-supervise claim that "lacks any hint that [defendant] acted with deliberate indifference to the possibility that his subordinates would violate [plaintiff's] constitutional rights"). The plaintiff asserts that D.A. Vance has a policy of evaluating his office based on its conviction rate, which "establishes deliberate indifference." (2nd Am. Compl., ¶ 435). This is precisely the type of formulaic recitation of elements that fails to satisfy Rule 12(b)(6); the plaintif merely proffers a legal conclusion without providing factual support.

Accordingly, I recommend the fifth cause of action be dismissed.[10]

### 2. Alana Gardner

#### a. Free Speech

The plaintiff alleges that Ms. Gardner deprived him of his "rights to free expression" and "retaliat[ed] against [his] exercise of his constitutionally protected speech" in violation of the First and Fourteenth Amendments. (2nd Am. Compl., ¶ 478). These allegations, liberally construed, appear to raise two free speech violations: first, that the restrictions on his phone calls to Ms. Gardner and Judge Edwards constituted impermissible viewpoint-based discrimination (Pl. State Memo. at 44, 46-47) and second, that his prosecution for criminal contempt and aggravated harassment was retaliation in violation of the First Amendment (2nd

---

[10] As the plaintiff has not stated a claim against D.A. Vance, an analysis of D.A. Vance's immunity defense is unnecessary.

Am. Compl., ¶ 228). However, the facts alleged in the Second Amended Complaint fail to satisfy the elements of either claim.

The plaintiff's claim of impermissible content-based restriction of speech fails because he has no First Amendment right to engage in expressive speech through ex parte calls to the court. Cf. Remy v. Beneri, No. 09 CV 4444, 2011 WL 5546237, at *8 (E.D.N.Y. Nov. 9, 2011) ("Plaintiff's speech in the courtroom was not 'deserving of First Amendment protection.'"). Before a plaintiff may recover on a First Amendment claim under § 1983, he "must demonstrate that his conduct is deserving of First Amendment protection." Rattner v. Netburn, 930 F.2d 204, 208 (2d Cir. 1991) (quoting Donahue v. Windsor Locks Board of Fire Commissioners, 834 F.2d 54, 58 (2d Cir. 1987)). A court's initial step in determining whether the First Amendment protects particular speech is to "examine the nature of the forum in which the speaker's speech is restricted." Huminski v. Corsones, 396 F.3d 53, 89 (2d Cir. 2004). Ms. Gardner's phone in Judge Edwards' chambers is a non-public forum.[11] See Washpon v. Parr, 561 F. Supp. 2d 394, 408 (S.D.N.Y. 2008) ("Supreme Court and Second Circuit precedent are clear that a courthouse is a non-public forum."); Huminski 396 F.3d at 90.

"Restrictions on speech in a non-public forum -— including those based on subject matter and speaker identity —- are lawful 'so long as the distinctions drawn are reasonable in light of the

---

[11] Although the plaintiff makes several references to Ms. Gardner's telephone line being a "public line" available for First Amendment expression (2nd Am. Compl., ¶¶ 185, 198, 405), he ultimately concedes that a courthouse is a non-public forum (Pl. State Memo. at 46).

purpose served by the forum and are viewpoint neutral.'" <u>Omor v. City of New York</u>, No. 13 Civ. 2439, 2015 WL 857587, at *5 (S.D.N.Y. Feb. 27, 2015) (quoting <u>Byrne v. Rutledge</u>, 623 F.3d 46, 54 (2d Cir. 2010)); <u>see also</u> <u>Huminski</u>, 396 F.3d at 90.  The reasonableness of a restriction "must be assessed in the light of the purpose of the forum and all the surrounding circumstances." <u>Cornelius v. NAACP Legal Defense and Education Fund, Inc.</u>, 473 U.S. 788, 809 (1985). The principal purpose of a courthouse is "to facilitate the smooth operation of a government's judicial functions." <u>Huminski</u>, 396 F.3d at 91.  Accordingly, a restriction that serves to advance the efficient and proper administration of the justice system is reasonable.  <u>See</u> <u>Bank v. Katz</u>, 424 F. App'x 67, 68 (2d Cir. 2011) ("A restriction is 'reasonable' if 'it is wholly consistent with the government's legitimate interest in preserving the property for the use to which it is lawfully dedicated.'" (quoting <u>Make the Road by Walking, Inc. v. Turner</u>, 378 F.3d 133, 147 (2d Cir. 2004))). Here, Mr. Leibovitz challenges Ms. Gardner's refusal to speak with him and her "willful[] screening" of his calls to Judge Edwards' chambers.  (2nd Am. Compl., ¶¶ 198-200).  These allegations fail to state a claim because restrictions on communications with chambers are reasonable in light of the nature and function of a courthouse; therefore, the plaintiff had no First Amendment right to speak with Ms. Gardner.

    Nor did the restrictions on Mr. Leibovitz's contact with chambers constitute viewpoint discrimination.  When the plaintiff called Ms. Gardner on August 7, 2013, she immediately -- and <u>before</u>

Mr. Leibovitz said anything of substance -- informed him that she could not speak with him. (2nd Am. Compl., ¶ 198). The plaintiff claims that his "speech and expression after his initial call with Ms. Gardner [wa]s immediately impeded on [sic] in order to suppress [his] point of view." (Pl. State Memo. at 50). This allegation is conclusory and unsupported by the facts in the Second Amended Complaint. That Ms. Gardner listened to the plaintiff the first time he called does not prove that she subsequently refused to talk to him because he was criticizing Judge Edwards. Nor does the fact that a court attorney in another chambers spoke with the plaintiff indicate that Ms. Gardner's refusal to engage with the plaintiff was an "effort to suppress expression merely because [she] oppose[d] [his] view." (Pl. State Memo. at 44). Rather, the facts simply indicate that Ms. Gardner chose not partake in a one-sided barrage of criticism and profanity. (2nd Am. Compl., ¶¶ 198-205). The plaintiff's repeated calls to chambers -- in which he argued against past rulings and berated Ms. Gardner -- clearly fall within the category of communications that do not "facilitate the smooth operation" of the court's judicial functions and therefore may be restricted without implicating the First Amendment. Huminski, 396 F.3d at 91. Thus, the plaintiff has failed to state a claim for impermissible content-based restriction of speech under the First Amendment.

The plaintiff's state law claim similarly fails because a claim under Article I, § 8 of the New York State Constitution "is subject to the same general inquiry concerning the appropriateness

of particular expressive activities associated with particular forums" as is applied to a claim under the First Amendment. People for Ethical Treatment of Animals v. Giuliani, 105 F. Supp. 2d 294, 336 (S.D.N.Y.), adopted, 2000 WL 1639423 (S.D.N.Y. Oct. 31, 2000), aff'd, 18 F. App'x 35 (2d Cir. 2001); see also Rogers v. New York City Transit Authority, 89 N.Y.2d 692, 698-702, 657 N.Y.S.2d 871, 874-77 (1997) (adopting public forum doctrine for interpretation of Article I, § 8 of the New York Constitution); cf. United for Peace and Justice v. Bloomberg, 5 Misc. 3d 845, 851, 783 N.Y.S.2d 255, 260 (N.Y. Sup. Ct. 2004) ("Under both the State and Federal Constitutions, the analysis applicable to a regulation which restricts speech in a public forum is the same.").

The plaintiff also fails to state a claim for retaliatory prosecution. In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) adverse action against the plaintiff, and (3) a causal link between the constitutionally protected conduct and the retaliatory action. Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004). "[C]laims of free speech retaliation under the New York State Constitution are governed by the same principles that apply under the Federal Constitution." Burns v. Cook, 458 F. Supp. 2d 29, 38 n.3 (N.D.N.Y. 2006). The plaintiff alleges that, sometime after his September 3, 2013, call to Ms. Gardner, Ms. Gardner, "in retaliation[,] contacted A.D.A. Bartolomey and informed her that Mr. Leibovitz [had] placed a call to her office," thereby

initiating the second criminal case against him.[12] (2nd Am. Compl.,
¶ 228).   Yet, as discussed above, the plaintiff is not
constitutionally guaranteed unfettered access to Ms. Gardner;
therefore, his communications with chambers cannot form the basis
for a claim of retaliatory prosecution in violation of the First
Amendment.   See Velez v. Levy, 401 F.3d 75, 97 (2d Cir. 2005)
(requiring that plaintiff's actions be "protected by First
Amendment" to support free speech retaliation claim).

Moreover, in the Second Circuit, "[a]n individual does not
have a right under the First Amendment to be free from a criminal
prosecution supported by probable cause that is in reality an
unsuccessful attempt to deter or silence criticism of the
government." Mozzochi v. Borden, 959 F.2d 1174, 1180 (2d Cir.
1992); see also Hartman v. Moore, 547 U.S. 250, 265-66 (2006)
(holding that absence of probable cause "must be pleaded and
proven" to support a claim of free speech retaliatory prosecution);
cf. Reichle v. Howards, ___ U.S. ___, ___, 132 S. Ct. 2088, 2093
(2012) ("This Court has never recognized a First Amendment right to
be free from a retaliatory arrest that is supported by probable
cause."). Here, the plaintiff's arrest and prosecution for
criminal contempt in the second degree and aggravated harassment in
the second degree were supported by probable cause.

---

[12] The plaintiff also makes several references to Judge
Ferrara's allegedly retaliatory actions. (Pl. State Memo. at 53,
59-60). However, Judge Ferrara has already been dismissed as a
defendant from this lawsuit. (Order dated July 8, 2014).

Probable cause to initiate a prosecution may be "described as such facts and circumstances as would lead a reasonably prudent person to believe the [accused person is] guilty." Boyd v. City of New York, 336 F.3d 72, 76 (2d Cir. 2003); accord Colon v. City of New York, 60 N.Y.2d 78, 82, 468 N.Y.S.2d 453, 455 (1983). Probable cause exists when one has reason to believe that a criminal defendant "could be successfully prosecuted," Posr v. Court Officer Shield Number 207, 180 F.3d 409, 417 (2d Cir. 1999); certainty of success is unnecessary, Brown v. City of New York, 92 A.D.2d 15, 18, 459 N.Y.S.2d 589, 591 (1st Dep't), aff'd, 60 N.Y.2d 893, 470 N.Y.S.2d 571 (1983); see also Williams v. City of New York, No. 10 Civ. 9594, 2012 WL 547508, at *6 (S.D.N.Y. Feb. 17, 2012). The existence of probable cause may be determined as a matter of law when there are no material factual disputes. See Betts v. Shearman, 751 F.3d 78, 82 (2d Cir. 2014) (upholding dismissal of claims based on existence of probable cause); Koester v. Lanfranchi, 288 F. App'x 764, 767 n.3 (2d Cir. 2008) (determining probable cause as a matter of law despite disputed facts where resolution of dispute in plaintiff's favor would not defeat probable cause); Orminski v. Village of Lake Placid, 268 A.D.2d 780, 781, 702 N.Y.S.2d 181, 182 (3d Dep't 2000).

The Second Amended Complaint on its face supports a finding that Ms. Gardner had probable cause to believe that the plaintiff was guilty of criminal contempt in the second degree and aggravated harassment in the second degree, the charges for which she was the complaining witness. New York Penal Law § 215.50(3) states that a

24

person is guilty of criminal contempt in the second degree when he engages in "intentional disobedience or resistance to the lawful process or other mandate of a court." N.Y. Penal Law § 215.50(3). "[A]n oral 'order' or directive, issued in the contemnor's presence, placed upon the record and transcribed into the minutes of the proceeding, may be deemed a 'mandate' . . . ." Betancourt v. Boughton, 204 A.D.2d 804, 808, 611 N.Y.S.2d 941, 945 (3d Dep't 1994) (collecting cases). The plaintiff's argument to the contrary (2nd Am. Compl., ¶ 216; Pl. State Memo. at 61-63) has been expressly considered and rejected by New York courts, see Silverman v. Seneca Realty Co., 154 Misc. 35, 39-41, 276 N.Y.S. 466, 471-73 (N.Y. Sup. Ct. 1934) (rejecting argument that "proper construction of section 753 of the Judiciary Law requires a written order" and describing court's oral direction "made a part of the minutes taken by the stenographer and [] open to no misunderstanding" as "clearly" falling within section 28-a of the General Construction Law). On August 9, 2013, Judge Ferrara directed the plaintiff not to contact Judge Edwards or Ms. Gardner. (2nd Am. Compl., ¶ 213). The plaintiff's failure to comply with that order, which he acknowledged he understood and which was entered in the court's minutes (2nd Am. Compl., ¶ 213), "would lead a reasonably prudent person to believe" the plaintiff was guilty of contempt, Boyd, 336 F.3d at 76.

Ms. Gardner also had probable cause to believe that the plaintiff was guilty of aggravated harassment in the second degree. At the time in question, Penal Law § 240.30(1)(a) provided that

25

"[a] person is guilty of aggravated harassment in the second degree when, with intent to harass, annoy, threaten or alarm another person, he or she . . . communicates with a person . . . in a manner likely to cause annoyance or alarm." N.Y. Penal Law § 240.30 (as amended by 2008 N.Y. Sess. Laws, ch. 510 § 1, eff. Dec. 3, 2008).[13] In the Second Amended Complaint, the plaintiff admits that he called Ms. Gardner repeatedly, yelling and cursing. (2nd Am. Compl., ¶¶ 198-205). On August 7, 2013, he left several messages in which his "choice of profanity encompassed the whole spectrum [and] [h]is tone of voice fluctuated many times but mostly residing [sic] in the highest decibel." (2nd Am. Compl., ¶ 202). Then, between September 2 and 3, 2013, despite having been told by Judge Ferrara to not contact Ms. Gardner (2nd Am. Compl., ¶ 213), the plaintiff again called her multiple times (2nd Am., ¶¶ 226-227). Based on these facts, Ms. Gardner had probable cause to believe the plaintiff was guilty of aggravated harassment in the second degree. See Silver v. Kuehbeck, 217 F. App'x 18, 22 (2d Cir. 2007) ("[A]fter [plaintiff's] 'agitation had grown to anger' . . . he attempted to contact [defendant] and left messages 'about her evident lack of consideration and disrespect' . . . . Such undisputed facts clearly establish the elements of aggravated harassment, N.Y. Penal Law § 240.30(1). . . ."); Dzwonczyk v. Syracuse City Police Department, 710 F. Supp. 2d 248, 266 (N.D.N.Y.

---

[13] This language reflects the text of the statute in effect at the time of the plaintiff's arrest in September 2013; it has since been amended. See 2014 N.Y. Sess. Laws ch. 188 § 1, eff. July 23, 2014.

2008) (finding "repeated unwanted written and verbal communications," which "persisted, despite Plaintiff having been twice contacted by police regarding the matter," established probable cause for second degree aggravated harassment). The New York Court of Appeals' decision in Golb, 23 N.Y.3d at 467-68, 991 N.Y.S.2d at 800-01, holding § 240.30(1) unconstitutional, does not alter the analysis of probable cause. Golb was decided after the plaintiff's arrest. The violation of a presumptively valid statute that is later found unconstitutional supports a finding of probable cause. Michigan v. DeFillippo, 443 U.S. 31, 37-38 (1979); Vives v. City of New York, 405 F.3d 115, 117-18 (2d Cir. 2004).

Because the charges against the plaintiff were supported by probable cause, he cannot state a claim for retaliation under the First Amendment or the New York State Constitution. See Lederman v. Benepe, No. 12 Civ. 6028, 2014 WL 1318356, at *9 (S.D.N.Y. March 28, 2014) ("Where there is probable cause to believe that a plaintiff has committed a crime, however, the case law indicates that First Amendment interests must yield, and that an inquiry into the motive for making an arrest is not necessary."); Richardson v. New York City Health and Hospitals Corp., No. 05 Civ. 6278, 2009 WL 804096, at *18-19 (S.D.N.Y. March 25, 2009) (plaintiff's argument that "she was arrested in retaliation" for threatening to report defendant "must fail because her arrest was supported by probable cause").

Therefore, the plaintiff's sixth and eleventh claims for viewpoint discrimination and free speech retaliation should be

dismissed.

      b.   <u>False Imprisonment and False Arrest</u>[14]

The plaintiff claims that, "by arresting the Plaintiff without probable cause," Ms. Gardner violated his Fourth Amendment right to "be free from false arrest and false imprisonment." (2nd Am. Compl., ¶ 481). Although Ms. Gardner did not herself arrest Mr. Leibovitz, he seeks to hold her liable on the theory that because she supplied false information to the police, she caused his false arrest. (2nd Am. Compl., ¶¶ 294-295; Pl. State Memo. at 72-73). The defendants argue that she is not liable because she had probable cause to believe the plaintiff had committed criminal contempt in the second degree and aggravated harassment in the second degree. (Memorandum of Law in Support of New York State Defendants' Motion to Dismiss in Part ("State Def. Memo.") at 11-15). They are correct, and the plaintiff's claims for false imprisonment as alleged against Ms. Gardner should be dismissed.

False arrest is "an unlawful detention contrary to the will of the person detained, accomplished with or without process of law." <u>Curley v. AMR Corp.</u>, 153 F.3d 5, 13 (2d Cir. 1998) (internal quotation marks and citation omitted). A claim for false arrest under § 1983 rests on the Fourth Amendment right of an individual to be free from unreasonable seizures, including the right not to

---

[14] "In New York, false arrest and false imprisonment 'are two names for the same tort.'" <u>Biswas v. City of New York</u>, 973 F. Supp. 2d 504, 515 (S.D.N.Y. 2013) (quoting <u>Holland v. City of Poughkeepsie</u>, 90 A.D.3d 841, 845, 935 N.Y.S.2d 583, 589 (2d Dep't 2011)), <u>appeal dismissed sub nom.</u> <u>Biswas v. Kwait</u>, 576 F. App'x 58 (2d Cir. 2014).

be arrested without probable cause. <u>Jaegly v. Couch</u>, 439 F.3d 149, 151 (2d Cir. 2006); <u>Golphin v. City of New York</u>, 09 Civ. 1015, 2011 WL 4375679, at *1 (S.D.N.Y. Sept. 19, 2011). A § 1983 claim involves "substantially the same" elements as a claim for false arrest under state law. <u>Rutigliano v. City of New York</u>, 326 F. App'x 5, 7 (2d Cir. 2009); <u>see also</u> <u>Jaegly</u>, 439 F.3d at 151-52 ("In analyzing § 1983 claims for unconstitutional false arrest, [courts] generally look[] to the law of the state in which the arrest occurred."). Under New York law, the elements of false imprisonment claim are that: (1) the defendant intentionally confined the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. <u>Ackerson v. City of White Plains</u>, 702 F.3d 15, 19 (2d Cir. 2012).

To satisfy the first element of a false arrest claim, a plaintiff must show that the defendant either confined or intended to confine the plaintiff or that she "affirmatively procured or instigated the plaintiff's arrest." <u>King v. Crossland Savings Bank</u>, 111 F.3d 251, 256 (2d Cir. 1997) (recognizing private defendant's liability for arrest made by law enforcement officials). Therefore, even where there is no allegation that a defendant actually restrained a plaintiff, a claim of false arrest may succeed where a plaintiff can show that the defendant "instigated his arrest, thereby making the police [] agents in accomplishing [the defendant's] intent to confine the plaintiff." <u>Carrington v. City of New York</u>, 201 A.D.2d 525, 527, 607 N.Y.S.2d

721, 722 (2d Dep't 1994).  One way a civilian may cross the line from merely furnishing information to instigating an arrest is by knowingly providing false information that leads to the arrest. Compare Du Chateau v. Metro-North Commuter Railroad Co., 253 A.D.2d 128, 131, 688 N.Y.S.2d 12, 15 (1st Dep't 1999) ("It is well settled in this State's jurisprudence that a civilian complainant, by merely seeking police assistance or furnishing information . . . will not be held liable for false arrest or malicious prosecution."), with Bertuglia v. City of New York, 839 F. Supp. 2d 703, 722 (S.D.N.Y. 2012) (denying motion to dismiss where plaintiffs pled that defendants "urge[d] [officials] to arrest the plaintiffs based on information that [they] knew was false") and Druschke v. Banana Republic, Inc., 359 F. Supp. 2d 308, 312-13 (S.D.N.Y. 2005) ("[Plaintiff] adequately alleged that [defendant], rather than 'merely giving information to legal authorities,' affirmatively procured her arrest by manufacturing a 'false and malicious accusation.'") and Dunn v. City of Syracuse, 83 A.D.2d 783, 783, 443 N.Y.S.2d 463, 464 (4th Dep't 1981)("One who wrongfully accuses another of criminal conduct and induces or procures that person's arrest may be liable for false arrest.").

Mr. Leibovitz alleges that Ms. Gardner withheld information and intentionally misled Detective Valle to procure his arrest. (2nd Am. Compl., ¶¶ 294-297).  Specifically, he points to the fact that she failed to mention that his "intent for placing the call [on September 3, 2013,] was just to get a new subpoena signed not to harass." (2nd Am. Compl., ¶ 295; Pl. State Memo. at 73).  Yet

these allegations do not plausibly suggest that Ms. Gardner conveyed misinformation to the police in order to instigate a baseless prosecution. As I have already concluded, Ms. Gardner had reason to believe Mr. Leibovitz was guilty of criminal contempt and aggravated harassment. See DeFilippo v. County of Nassau, 183 A.D.2d 695, 696-697, 583 N.Y.S.2d 283 (2d Dep't 1992) (dismissing false imprisonment cause of auction because "there is nothing to indicate . . . [defendant] lacked reasonable cause for [her] belief in the plaintiff's culpability"). Furthermore, even if Ms. Gardner did not go into detail about the content of Mr. Leibovitz's first call on September 3, 2013, the omitted information does not alter the probable cause determination. Mr. Leibovitz arguably violated Judge Ferrara's order when he called Ms. Gardner on September 3, 2013, regardless of his reason for doing so. And his further calls and messages that day and on September 13, 2013 (2nd Am. Compl., ¶¶ 227, 250; Supporting Deposition of Alana Gardner dated September 24, 2013, attached as Exh. 1 to 2nd Am. Compl.), combined with his previous calls and messages, provide support for a reasonable belief that he was guilty of harassment, see Michaels v. City of New York, No. 10 Civ. 2666, 2011 WL 570125, at *6 (S.D.N.Y. Feb. 16, 2011) (dismissing false arrest claim where, accepting complaint's allegations as true, probable cause existed); Terio v. Michaud, No. 10 Civ. 4276, 2010 WL 6032586, at *4 (S.D.N.Y. Dec. 3, 2010) (noting that false arrest claim cannot survive motion to dismiss if "plaintiff's version of events establishes probable cause to arrest").

Accordingly, the plaintiff's seventh, ninth, and twelfth claims should be dismissed as against Ms. Gardner.

c.   Malicious Prosecution

The plaintiff's tenth[15] and seventeenth claims against Ms. Gardner for malicious prosecution should also be dismissed. New York law provides the framework for § 1983 claims of malicious prosecution. Manganiello v. City of New York, 612 F.3d 149, 160-61 (2d Cir. 2010). The elements of a claim for malicious prosecution under New York law are (1) that the defendant initiated a prosecution against the plaintiff, (2) that the prosecution was terminated in the plaintiff's favor, (3) that the defendant lacked probable cause to believe that the proceeding could go forward, and (4) that the defendant acted with malice. Id. at 161; see also Hines v. City of Yonkers, No. 08 Civ. 3126, 2011 WL 3055369 at *5 (S.D.N.Y. July 20, 2011); Broughton, 37 N.Y.2d at 457, 373 N.Y.S.2d at 94. In addition to establishing that the defendant's conduct was tortious under state law, a § 1983 plaintiff must also demonstrate a "sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." Rohman v. New

_____

[15] Although the plaintiff alleges violations of the Fourth, Fifth, and Fourteenth Amendments, as previously noted, he cannot state a claim against the defendants based on the Fifth Amendment. Furthermore, there is no substantive due process right to be free from malicious prosecution. Albright v. Oliver, 510 U.S. 266, 271 (1994). Therefore, "allegations of . . . malicious prosecution state a claim only under the Fourth Amendment, and not under the Due Process Clause of the Fourteenth Amendment." Ambrose v. City of New York, 623 F. Supp. 2d 454, 474 n.9 (S.D.N.Y. 2009); see also Burg v. Gosselin, 591 F.3d 95, 97 (2d Cir. 2010) (noting that malicious prosecution deprivation of liberty claims fall within the ambit of the Fourth Amendment).

York City Transit Authority, 215 F.3d 208, 215 (2d Cir. 2000).

Failure to establish any element will defeat the entire claim. Hoyt v. City of New York, 284 A.D.2d 501, 502, 727 N.Y.S.2d 317, 318 (2d Dep't 2001).  Thus, probable cause is a complete defense to a claim of malicious prosecution.  See Manganiello, 612 F.3d at 161-62; Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003). In a malicious prosecution action, the relevant inquiry is whether probable cause existed to believe the criminal proceeding could succeed.  Posr, 180 F.3d at 417; DiBlasio v. City of New York, 102 F.3d 654, 659 (2d Cir. 1996) ("In the context of a malicious prosecution claim, probable cause under New York law is the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of." (quoting Rounseville v. Zahl, 13 F.3d 625, 629 (2d Cir. 1994))).

The plaintiff contends that "[Ms. Gardner's] complaint caused criminal charges to be brought against [Mr. Leibovitz] without probable cause and with malice."  (2nd Am. Compl., ¶ 507).  This allegation is conclusory and unsupported by the facts in the Second Amended Complaint.  I have already determined that the undisputed facts justified Ms. Gardner's belief that the defendant was guilty of the crimes with which he was charged.  Because the existence of probable cause is a complete defense to a claim of malicious prosecution, I therefore recommend that the plaintiff's tenth and seventeenth claims for malicious prosecution against Ms. Gardner be dismissed.

d.   <u>Maliciously Procuring an Arrest Warrant</u>

Plaintiff's fifteenth claim, "maliciously procuring an unlawful arrest warrant," should also be dismissed, as such a claim amounts to a claim under state law for malicious prosecution.  <u>See</u> <u>Malley v. Briggs</u>, 475 U.S. 335, 340-41 (1986) (discussing common law rule that "one who procured the issuance of an arrest warrant by submitting a complaint could be held liable [for malicious prosecution] if the complaint was made maliciously and without probable cause"); <u>Halberstadt v. New York Life Insurance Co.</u>, 194 N.Y. 1, 5, 8 (1909) (holding that "falsely making a serious criminal accusation" during "application for and issuance to a proper officer for execution of a warrant on a criminal charge" may form basis of claim for malicious prosecution).

e.   <u>Malicious Abuse of Process</u>

"Procedural due process forbids the use of legal process for a wrongful purpose."  <u>Cook v. Sheldon</u>, 41 F.3d 73, 80 (2d Cir. 1994).  Therefore, a defendant may be liable under § 1983 for malicious abuse of the criminal process.  <u>Savino</u>, 331 F.3d at 76-77; <u>Cook</u>, 41 F.3d at 80.  As with malicious prosecution, state law determines the elements of a § 1983 claim for malicious abuse of process.  <u>Cook</u>, 41 F.3d at 80.  Under New York law, a plaintiff must allege that the defendant: "(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process."  <u>Id.</u>  The Second Amended Complaint

fails to state a claim against Ms. Gardner for malicious abuse of process because it contains no facially plausible allegation of an improper collateral objective.

"The crux of a malicious abuse of process claim is the collateral objective element," Kraft v. City of New York, 696 F. Supp. 2d 403, 416 (S.D.N.Y. 2010), aff'd, 441 F. App'x 24 (2d Cir. 2011), which requires "an effect outside the intended scope of operation of the process employed," Jones v. Maples/Trump, No. 98 Civ. 7132, 2002 WL 287752, at *7 (S.D.N.Y. Feb. 26, 2002), aff'd sub nom. Jones v. Trump, 71 F. App'x 873 (2d Cir. 2003). In other words, to meet this element a plaintiff must claim that the defendant aimed to achieve a purpose beyond or in addition to his criminal prosecution. Kraft, 696 F. Supp. 2d at 416. The plaintiff's allegations are deficient because his arrest and prosecution were within the intended scope of the process. To the extent he identifies the criminal complaint and Ms. Gardner's supporting deposition as the specific processes abused, his claim must fail because those accusatory instruments were "employed for the very purpose of their filing," namely the plaintiff's arrest for criminal contempt in the second degree and aggravated harassment in the second degree. Silver v. Kuehbeck, 217 F. App'x 18, 21 (2d Cir. 2007). Notwithstanding a defendant's motives, there can be no abuse of process where a defendant used the process of the court for the purpose for which the law created it. Savino, 331 F.3d at 77; see also Brandon v. City of New York, 705 F. Supp. 2d 261, 275 (S.D.N.Y. 2010) ("If [one] uses the process of the

court for its proper purpose, though there is malice in his heart, there is no abuse of process." (alteration in original) (quoting Hauser v. Bartow, 273 N.Y. 370, 374, 7 N.E.2d 268, 269 (1937)); Butler v. Ratner, 210 A.D.2d 691, 693, 619 N.Y.S.2d 871, 873 (3d Dep't 1994) (stating that false accusations "and defendant's malicious motive in making them do not, of themselves, give rise to a cause of action for abuse of process").

The Second Amended Complaint fails to state a collateral objective that was outside the legitimate ends of the process employed. The plaintiff's allegation that Ms. Gardner filed the criminal complaint "as retribution" after he stated that he was going to file a lawsuit against her and Judge Edwards (2nd Am. Compl., ¶¶ 535-36) does not establish an improper collateral objective, see Rodriquez v. Village of Sleepy Hollow, No. 13 Civ. 8465, 2015 WL 4597446, at *8 (S.D.N.Y. July 29, 2015) ("Plaintiffs fail to state that Defendants had any collateral intent . . . beyond political retribution. As retaliation does not suffice as a collateral motive, Plaintiffs fail to establish the third element of an abuse of process claim . . . ."); Sterngass v. Asheim, No. 12 Civ. 6106, 2013 WL 8284985, at *6 (S.D.N.Y. Nov. 26, 2013) ("As an initial matter, 'retribution,' by definition, cannot constitute a collateral objective for purposes of the tort of abuse of process."). The plaintiff's claims that Ms. Gardner sought to prevent him from speaking out against her or Judge Edwards (2nd Am. Compl., ¶ 491) and "was using her position to settle personal scores" (2nd Am. Compl., ¶ 263) are not only conclusory, but are

also legally insufficient, see Newton v. City of New York, 566 F. Supp. 2d 256, 280 (S.D.N.Y. 2008) ("Personal animosity is a collateral motive, not a collateral purpose."); Jones, 2002 WL 287752, at *8 (dismissing claim where plaintiff alleged defendants brought harassment charges against him to "silence plaintiff's criticism of defendants"); Curiano v. Suozzi, 63 N.Y.2d 113, 115-17, 480 N.Y.S.2d 466, 467-68 (1984) (rejecting abuse of process claim when alleged wrongful objectives were to punish plaintiffs' exercise of free speech and electoral participation).

In his opposition, the plaintiff asserts that Ms. Gardner "fabricated contempt and harassment charges . . . for the improper 'collateral objective' [of] safeguard[ing] her own employment." (Pl. State Memo. at 71).[16]  That allegation is similarly insufficient. See Jovanovic v. City of New York, No. 04 Civ. 8437, 2010 WL 8500283, at *10 (S.D.N.Y. Sept. 28, 2010) (allegation that defendant arrested plaintiff because a colleague -- who defendant wanted to impress -- ordered him to do so "does not rise to the level of 'protecting one's job,' as there is no evidence that [defendant] believed he could lose his job[] if he did not arrest [plaintiff]"), aff'd, 486 F. App'x 149 (2d Cir. 2012).  To satisfy the plausibility standard established in Twombly and Iqbal, the

---

[16] The policy favoring liberal construction of pro se pleadings warrants my considering allegations contained in the plaintiff's memorandum of law to the extent they are not inconsistent with his Second Amended Complaint. See Fox v. City of New York, No. 03 Civ. 2268, 2004 WL 856299, at *1 (S.D.N.Y. April 20, 2004) ("Because [plaintiff] is a pro se litigant, the Court may rely on both his amended complaint and his motion papers in assessing the legal sufficiency of his claims.").

plaintiff must allege some conduct by Ms. Gardner based on more than speculation.  Because he has not provided any facts to corroborate an improper purpose, he has not stated a claim of abuse of process.  Duamutef v. Morris, 956 F. Supp. 1112, 1119 (S.D.N.Y. 1997) ("[A] complaint which alleges [a collateral objective] in wholly conclusory terms may safely be dismissed on the pleadings alone.") (quoting Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983)); Parkash v. Town of Southeast, No. 10 Civ. 8098, 2011 WL 5142669, at *7 (S.D.N.Y. Sept. 30, 2011) ("Repetitive, conclusory statements are insufficient to sustain this claim [of abuse of process].").  aff'd, 468 F. App'x 80 (2d Cir. 2012).

Accordingly, the plaintiff's eighth and fourteenth claims should be dismissed.

### f.  Assault and Battery

The plaintiff also seeks to hold Ms. Gardner liable for assault and battery.  These claims are premised on his arrest on September 23, 2013.  (Pl. State Memo. at 80).  Under New York law, claims of assault and battery are subject to a one-year statute of limitations.  N.Y. CPLR § 215(3).  Therefore, the plaintiff had until September 23, 2014 to file a claim.  Because he did not name Ms. Gardner as a defendant until October 8, 2014 (First Amended Complaint ("1st Am. Compl."), ¶ 35), the plaintiff's assault and battery claims against Ms. Gardner are barred by the statute of limitations, see Staehr v. Hartford Financial Services Group, Inc., 547 F.3d 406, 425 (2d Cir. 2008) (noting that while "[t]he lapse of a limitations period is an affirmative defense that a defendant

must plead and prove[,]" it may be "raise[d] . . . in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint"). I therefore recommend that the plaintiff's thirteenth and eighteenth claims be dismissed.

### 3. Officer Rapaglia

#### a. Deliberate Indifference to Medical Needs

The plaintiff claims that Officer Rapaglia violated his constitutional rights by failing to provide medical treatment. (2nd Am. Compl., ¶¶ 569-575). To establish an unconstitutional denial of medical care under § 1983, a plaintiff must show that the defendant was deliberately indifferent to his serious medical needs. Farmer v. Brennan, 511 U.S. 825, 835 (1994); Estelle v. Gamble, 429 U.S. 97, 104 (1976) ("[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.)). Although a pre-trial detainee's right to be free from cruel and unusual punishment is rooted in the Fourteenth Amendment's due process protections, Caiozzo v. Koreman, 581 F.3d 63, 69 (2d Cir. 2009), the Eighth Amendment deliberate indifference test governs the merits of such a claim, see Weyant v. Okst, 101 F.3d 845, 856 (2d Cir. 1996). This standard requires a plaintiff to plead both an objective and a subjective element. Hudson v. McMillian, 503 U.S. 1, 8 (1992); Sims v. Artuz, 230 F.3d 14, 20 (2d Cir. 2000). First, the alleged deprivation must be, in objective terms, "sufficiently serious";

39

second, the plaintiff must show that "the defendant official possessed a 'sufficiently culpable state of mind'" such that he "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." Trammell v. Keane, 338 F.3d 155, 161, 164 (2d Cir. 2003) (quoting Farmer, 511 U.S. at 834, 837).

For a medical condition to satisfy the objective test, it must be a "'condition of urgency' that may result in 'degeneration' or 'extreme pain.'" Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (quoting Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994)).  Because the objective component of a claim for an unconstitutional denial of medical treatment is "contextual and fact-specific, the serious medical need inquiry must be tailored to the specific circumstances of each case." Smith v. Carpenter, 316 F.3d 178, 185 (2d Cir. 2003) (quoting Hudson, 503 U.S. at 8). Where the alleged inadequacy stems from a delay in the provision of treatment, the seriousness inquiry considers "the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than [just] the severity of the prisoner's underlying medical condition." Id. at 185-86.  "A delay in treatment results in a constitutional violation only if the failure to treat reflects 'a conscious disregard of a substantial risk of serious harm.'" Bryant v. Wright, No. 09 Civ. 2456, 2010 WL 3629443, at *9 (S.D.N.Y. Aug. 31, 2010) (quoting Chance, 143 F.3d at 703), report and recommendation adopted, 2010 WL 3629426 (S.D.N.Y. Sept. 15, 2010), aff'd, 451 F. App'x 12 (2d Cir. 2011).

To meet the subjective element, the plaintiff must demonstrate

40

that the official both knew of and disregarded his serious medical needs.  Farmer, 511 U.S. at 837.  In other words, he must show that "the charged official act[ed] or fail[ed] to act while actually aware of a substantial risk that serious inmate harm [would] result."  Jones v. Westchester County Department of Corrections Medical Department, 557 F. Supp. 2d 408, 414 (S.D.N.Y 2008) (quoting Salahuddin v. Goord, 467 F.3d 263, 280 (2d Cir. 2006)); see also Hanrahan v. Mennon, 470 F. App'x 32, 33 (2d Cir. 2012).

Mr. Leibovitz states that, on December 30, 2013, Officer Rapaglia "den[ied] him access to the medical facility when he was suffering from handcuff neuropathy rising to the level of deliberate indifference to Plaintiff's medical needs" and was "subjectively reckless in his denial."  (2nd Am. Compl., ¶¶ 572-573).  Yet beyond this purely conclusory assertion, the plaintiff does not allege facts sufficient to satisfy either element of a claim of deliberate indifference.  First, he fails to satisfy the objective prong because does not allege a sufficiently serious deprivation of medical care.  Although the plaintiff alleges that he suffered from a swollen wrist, a lack of sensation in his thumb, and a throbbing right ear (2nd Am. Compl., ¶ 354), these injuries do not constitute an objectively serious medical condition, see Mikulec v. Town of Cheektowaga, 909 F. Supp. 2d 214, 223 (W.D.N.Y. 2012) (dismissing deliberate indifference claim based on injuries sustained from excessively tight handcuffs and officers' disregard of complaints).  As the court in Mikulec noted, "[a]lthough especially tight handcuffs may help establish an [Eighth Amendment]

claim, it cannot be said that [plaintiff's] resulting injuries -- some bleeding and abrasions -- could have produced "death, degeneration, or extreme pain." Id. (internal citation omitted) (quoting Johnson v. Wright, 412 F.3d 398, 403 (2d Cir. 2005)); accord Evering v. Rielly, No. 98 Civ. 6718, 2001 WL 1150318, at *9 (S.D.N.Y. Sept. 28, 2001) ("Unlike the excessive force standard, deliberate indifference requires injuries that demonstrate urgency leading to death, degeneration or extreme pain.").

Furthermore, the plaintiff does not allege a serious delay in the provision of care.  He received medical treatment within a few hours of complaining of his injuries (2nd Am. Compl., ¶¶ 324, 394-395), and there is no indication that the delay caused additional harm.  Measured against cases challenging the timeliness of treatment, the facts, even taken in the light most favorable to the plaintiff, fall far short of satisfying the objective component of a deliberate indifference claim.  Cases in which delays in the provision of medical care have been held to satisfy the objective seriousness requirement have involved either a needlessly prolonged delay or a delay that caused extreme pain or exacerbated a serious illness.  Compare Salahuddin, 467 F.3d at 281 (five-month postponement of Hepatitis C treatment sufficiently serious delay) and Hathaway, 37 F.3d at 65, 67 (two-year delay in treatment of broken pin in plaintiff's hip that caused persistent pain satisfied objective prong), with Watts v. New York City Police Department, 100 F. Supp. 3d 314, 328 (S.D.N.Y. 2015) (one-day delay in bringing plaintiff to hospital for treatment insufficiently serious) and

42

Rodriquez v. Mercado, No. 00 Civ. 8588, 2002 WL 1997885, at *8
(S.D.N.Y. Aug. 28, 2002) (bruises to head, back, and wrists
insufficient to meet objective prong where, "[d]espite the
suggestion that [plaintiff] was kneed in the back and had his head
struck against the wall," plaintiff failed to "adduce[] any
evidence to suggest that any of his injuries . . . were so urgent
or life-threatening that they required immediate care").

    The plaintiff's claim also fails to meet the subjective prong
because the facts do not indicate that Officer Rapaglia acted with
a sufficiently culpable state of mind.  Conclusory allegations
about a defendant's culpable mental state are inadequate to state
a claim for deliberate indifference.  Myrie v. Calvo, 591 F. Supp.
2d 620, 628 (S.D.N.Y. 2008).  Even if the plaintiff could establish
that not receiving treatment immediately posed a sufficiently
serious risk to his health, he does not claim that Officer Rapaglia
was aware of any risk; nor do the facts support such an inference.
The plaintiff alleges that Officer Rapaglia knew he could not feel
his hand and wanted medical treatment before continuing with the
sentencing hearing.  (2nd Am. Compl., ¶¶ 359-361, 370).  He also
claims Officer Rapaglia taunted him by threatening to "tell the
Judge you don't want to see him" when he complained about his hand.
(2nd Am. Compl., ¶¶ 359-362).  These facts are insufficient to
demonstrate that Officer Rapaglia knew of and disregarded an
excessive risk to the plaintiff's health or safety.  See Farmer,
511 U.S. at 837.

    Accordingly, the plaintiff's twentieth claim for deliberate

43

indifference to medical needs should be dismissed.

### b.  State Law Claims

The plaintiff also raises state law tort claims against
Officer Rapaglia for assault, battery, intentional and negligent
infliction of emotional distress, and negligence.  The State
defendants have moved to dismiss the intentional tort claims
against Officer Rapaglia -- the twenty-second claim for assault and
battery and the twenty-third claim for intentional infliction of
emotional distress -- on the grounds that they are time-barred.
They have moved to dismiss the claims of negligent infliction of
emotional distress and negligence for failure to state a claim.

### i.  Statute of Limitations

Under New York law, claims of assault, battery, and
intentional infliction of emotional distress are subject to a
one-year statute of limitations.  N.Y. CPLR § 215(3); see also
Bellissimo v. Mitchell, 122 A.D.3d 560, 561, 995 N.Y.S.2d 603, 605
(2d Dep't 2014) (applying one-year statute of limitations to IIED
claim and citing CPLR § 215(3)).  The plaintiff alleges that
Officer Rapaglia "inflicted the torts of assault and battery upon
Mr. Leibovitz" on December 30, 2013. (2nd Am. Compl., ¶¶ 583-590).
Accordingly, the plaintiff had until December 30, 2014 to file
suit.  He raised these claims in the First Amended Complaint, which
was filed on October 8, 2014 (1st Am. Compl., ¶¶ 440-447), but did
not name Officer Rapaglia as a defendant until April 16, 2015 (2nd
Am. Compl., ¶ 43).  As the plaintiff did not list Officer Rapaglia
by name until after the statute of limitations expired, his claims

are timely only if the Second Amended Complaint relates back under Rule 15(c) of the Federal Rules of Civil Procedure.  Aslanidis v. United States Lines, Inc., 7 F.3d 1067, 1075 (2d Cir. 1993) (stating that amendment replacing a "John Doe" with a named party, filed after expiration of statute of limitations "may only be accomplished when all of the specifications of [Rule] 15(c) are met"); JCG v. Ercole, No. 11 Civ. 6844, 2014 WL 1630815, at *12 (S.D.N.Y. April 24, 2014) (same), report and recommendation adopted, 2014 WL 2769120 (S.D.N.Y. June 18, 2014).

For an amended complaint adding a new party to relate back under Rule 15(c)(1)(C):

> (1) the claim must have arisen out of conduct set out in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party should have known that, but for a mistake of identity, the original action would have been brought against it; and . . . [4] the second and third criteria are fulfilled within 120 days of the filing of the original complaint, and . . . the original complaint [was] filed within the limitations period.

Hogan v. Fischer, 738 F.3d 509, 517 (2d Cir. 2013) (alterations in original) (emphasis omitted) (quoting Barrow v. Wethersfield Police Department, 66 F.3d 466, 468-69 (2d Cir. 1995)).  The State defendants argue that the plaintiff cannot satisfy the third requirement because "the lack of knowledge of a John Doe defendant's name does not constitute a 'mistake of identity.'" (State Def. Reply at 10 (quoting Hogan, 738 F.3d at 518)).  They are correct.[17]

---

[17] The plaintiff contends that in Krupski v. Costa Crociere S.p.A., 560 U.S. 538 (2010), the Supreme Court "confirmed that the

Yet while the plaintiff's intentional tort claims do not relate back under Rule 15(c)(1)(C), Rule 15 also permits relation back when "the law that provides the applicable statute of limitations allows [it]." Fed. R. Civ. P. 15(c)(1)(A). Here, the limitations period is established by New York law, which "provides a 'more forgiving principle of relation back' in the John Doe context, compared to the federal relation back doctrine under Rule 15(c)(1)(C)." Hogan, 738 F.3d at 518 (quoting Fed. R. Civ. P. 15 advisory committee's note to 1991 amendment). Pursuant to § 1024 of the New York Civil Practice Law and Rules, if a plaintiff satisfies two requirements, "the limitations period is tolled between the filing of his complaint and the day he serves the proper defendant." Fisher v. County of Nassau, No. 10 CV 677, 2011 WL 4899920, at *4 (E.D.N.Y. Oct. 13, 2011); see also Luckern v. Lyonsdale Energy Ltd. Partnership, 229 A.D.2d 249, 254, 654 N.Y.S.2d 543, 546 (4th Dep't 1997) ("[A] claim asserted against unknown parties pursuant to CPLR [§] 1024 is deemed to be interposed for Statute of Limitations purposes when the 'John Doe'

---

reference to 'mistake' in Rule 15(c)(1)(C) does not necessarily bar relation back for a plaintiff who failed to properly name a defendant because he lacked knowledge of the defendant's name," (Pl. State Memo. at 90). As the State defendants note, however, in decisions issued after Krupski, the Second Circuit has reaffirmed that failing to name a John Doe defendant is not a "mistake" contemplated by Rule 15(c)(1)(C). (State Def. Reply at 9-10); see also Hogan, 738 F.3d at 518 ("This Circuit has interpreted the rule to preclude relation back for amended complaints that add new defendants, where the newly added defendants were not named originally because the plaintiff did not know their identities."); Vasconcellos v. City of New York, No. 12 Civ. 8445, 2014 WL 4961441, at *7 (S.D.N.Y. Oct. 2, 2014) ("[T]he Second Circuit has twice relied upon Barrow since Krupski was decided.").

summons with notice is filed with the clerk of the court . . . .").
"First, the party must 'exercise due diligence, prior to the
running of the statute of limitations, to identify the defendant by
name.'  Second, the party must describe the John Doe party 'in such
form as will fairly apprise the party that [he] is the intended
defendant.'"  Hogan, 738 F.3d at 519 (alteration in original)
(citations omitted) (quoting Bumpus v. New York City Transit
Authority, 66 A.D.3d 26, 29-30, 883 N.Y.S.2d 99, 104 (2d Dep't
2009)); see also Williams v. United States, No. 07 Civ. 3018, 2010
WL 963474, at *12 (S.D.N.Y. Feb. 25, 2010), report and
recommendation adopted, 2010 WL 963465 (S.D.N.Y. March 16, 2010).
Additionally, the plaintiff must "ascertain the identity of unknown
'[John] Doe' parties, and [] serve process upon them[] within 120
days from filing."  Bumpus, 66 A.D.3d at 31, 883 N.Y.S.2d at 105.

The record reflects that the plaintiff made efforts to
identify Officer Rapaglia prior to the expiration of the one-year
statute of limitations.  On December 9, 2014, the plaintiff filed
a Freedom of Information Law ("FOIL") request with the Attorney
General, seeking the names of the three officers involved in the
December 30, 2013 incident, whose shield numbers he provided.  (Pl.
State Memo. at 92).  He also claims to have "made a few trips to
Criminal Court and requested the aforementioned information from
other court officers."  (Pl. State Memo. at 92).  Whether these
efforts satisfy § 1024's due diligence requirement is less clear.
The plaintiff only  submitted his FOIL request -- his sole official
attempt to identify the John Doe defendants -- three weeks prior to

the expiration of the statute of limitations. Cf. Hogan, 738 F.3d at 519 (concluding plaintiff met due diligence requirement under § 1024 where he submitted "multiple discovery requests to the Attorney General's office"); Temple v. New York Community Hospital of Brooklyn, 89 A.D.3d 926, 928, 933 N.Y.S.2d 321, 323 (2d Dep't 2011) ("[W]hile some limited discovery demands were served prior to the expiration of the statute of limitations, when the responses received were less than adequate, the plaintiff failed to promptly seek further discovery, neglected to submit a properly executed authorization to the disclosing party, and failed to properly and promptly seek assistance from the Supreme Court."). However, while he could have done more, the plaintiff did make several attempts to identify Officer Rapaglia's identity prior to the expiration of the statute of limitations. Cf. Bender v. City of New York, No. 14 Civ. 4386, 2015 WL 524283, at *5 (S.D.N.Y. Feb. 10, 2015) ("Because of the complete lack of evidence as to [plaintiff's] due diligence, § 1024 will not permit [] relation back . . . ."); Williams, 2010 WL 963474, at *13 (finding § 1024 unavailable to plaintiff who "expended no efforts at all" to identify defendants in three-year period following incident, filed original complaint the day before limitations period expired, and waited eighteen month after confirming two defendants' identities to amend); Hall v. Rao, 26 A.D.3d 694, 695, 809 N.Y.S.2d 661, 662 (3d Dep't 2006) ("[The] record is utterly devoid of proof documenting what efforts, if any, plaintiffs undertook to identify [defendant] prior to the expiration of the statute of limitations."). Furthermore, after

Judge Abrams issued an order pursuant to <u>Valentin v. Dinkins</u>, 121 F.3d 72, 76 (2d Cir. 1997) (Order dated Feb. 10, 2014), and the Attorney General identified the John Doe defendants (Letter of Angel M. Guardiola II dated April 3, 2015 at 1-2), the plaintiff filed his second amended complaint naming Officer Rapaglia within two weeks of receiving the information. Therefore, the plaintiff satisfied § 1024's due diligence requirement. <u>See</u> <u>Ceara v. Deacon</u>, 68 F. Supp. 3d 402, 410-11 (S.D.N.Y. 2014) (concluding plaintiff exercised due diligence when he submitted letter to Inspector General prior to expiration of limitations period, then timely amended complaint upon receiving information pursuant to <u>Valentin</u> order).

The plaintiff also satisfied the notice requirement of § 1024. His First Amended Complaint, filed within the statute of limitations, provided sufficient information so that Officer Rapaglia would be fairly appraised that he was the intended defendant; it provided the time and date of the incident and identified the officer by shield number. <u>See</u> <u>Wilson v. City of New York</u>, No. 03 Civ. 2495, 2006 WL 2528468, at *3 (S.D.N.Y. Aug. 31, 2006) (finding notice requirement satisfied for John Doe officer when plaintiff identified date, approximate time, and place of arrest). Furthermore, there is no dispute that the Attorney General was aware of the lawsuit, as the First Amended Complaint named Ms. Gardner as a defendant. <u>See</u> <u>Velez v. Fogarty</u>, No. 06 Civ. 13186, 2008 WL 5062601, at *5 (S.D.N.Y. Nov. 20, 2008) ("The court can impute [constructive notice] of a lawsuit to a new

defendant government official through his attorney, when the attorney also represented the official(s) originally sued, so long as there is some showing that the attorney knew that the additional defendants would be added to the existing suit." (quoting Velez v. Koehler, 87 Civ. 2019, 1991 WL 130913 at *2 (S.D.N.Y. July 18, 1991)); accord Gleason v. McBride, 869 F.2d 688, 693 (2d Cir. 1989). As a result, the plaintiff's claims of assault, battery, and intentional infliction of emotional distress against Officer Rapaglia are not time-barred.

### ii. Assault and Battery

Under New York law, an assault is "an intentional placing of another person in fear of imminent harmful or offensive contact," while a battery is "an intentional wrongful physical contact with another person without consent." Girden v. Sandals International, 262 F.3d 195, 203 (2d Cir. 2001) (quoting United National Insurance Co. v. Waterfront New York Realty Corp., 994 F.2d 105, 108 (2d Cir. 1993)). "Courts interpreting New York state law of assault and battery as it applies to police officers have stated that 'the essential elements of [§ 1983] excessive force and state law assault and battery claims are substantially identical.'" Dotson v. Farrugia, No. 11 Civ. 1126, 2012 WL 996997, at *7 (S.D.N.Y. March 26, 2012) (alteration in original) (quoting Humphrey v. Landers, 344 F. App'x 686, 688 (2d Cir. 2009)); see also Pierre-Antoine v. City of New York, No. 04 Civ. 6987, 2006 WL 1292076, at *8 (S.D.N.Y. May 9, 2006) ("[T]he test for whether a plaintiff can maintain a supplemental cause of action for assault

and battery is the exact same test as the one used to analyze a Fourth Amendment excessive force claim.").

An officer's use of force is excessive if the amount used was objectively unreasonable, considering "the perspective of the officer at the time." Lowth v. Town of Cheektowaga, 82 F.3d 563, 573 (2d Cir. 1996); see also Maxwell v. City of New York, 380 F.3d 106, 108 (2d Cir. 2004) ("[F]orce is excessive . . . if it is objectively unreasonable 'in light of the facts and circumstances confronting [officer], without regard to [his] underlying intent or motivation.'") (quoting Graham v. Connor, 490 U.S. 386, 397 (1989)).  However, "the Second [C]ircuit has indicated that a very minimal injury is sufficient to trigger potential liability" for excessive force.  Yang Feng Zhao v. City of New York, 656 F. Supp. 2d 375, 390 (S.D.N.Y. 2009) (denying summary judgment on excessive force claim where plaintiff alleged detective pressed his head against a table, which resulted in pain for an hour).

The charges of assault, battery, and excessive force are based on Officer Rapaglia's alleged mistreatment of the plaintiff while removing him from the courtroom on December 30, 2013.  The plaintiff claims that Officer Rapaglia "violently grabbed Mr. Leibovitz's handcuffs and dragged him" from the courtroom (2nd Am. Compl., ¶ 343), "pulled [his] right ear" for approximately twenty seconds (2nd Am. Compl. ¶¶ 344-345), told Mr. Leibovitz "I will show you who is boss" (2nd Am. Compl. ¶ 346), and "grabbed Mr. Leibovitz's handcuffs and dragged him downstairs" (2nd Am. Compl. ¶ 349).  The plaintiff alleges that, after the incident, he

experienced "sharp, excruciating pain and discomfort," including a swollen left wrist, a lack of sensation in his thumb, and a throbbing right ear.  (2nd Am. Compl., ¶¶ 353-354).  These allegations plausibly suggests that Officer Rapaglia utilized an unreasonable amount of force, given the circumstances.  See Robison v. Via, 821 F.2d 913, 923-24 (2d Cir. 1987) (allegations that defendant "pushed" plaintiff against car door, "'yanked' [plaintiff] out, 'threw [plaintiff] up against the fender,' and 'twisted [plaintiff's] arm behind [plaintiff's] back,'" which resulted in "bruises lasting a 'couple weeks,'" "are sufficient to prevent the summary dismissal of a § 1983 claim for excessive force"); Bellows v. Dainack, 555 F.2d 1105, 1106 & n.1 (2d Cir. 1977) (allegations that defendant twisted plaintiff's arm, pushed him into the back seat of a police car, pulled him by the scruff of the neck, and struck him in the ribs sufficient to sustain excessive force claim); Hershey v. Goldstein, 938 F. Supp. 2d 491, 519 (S.D.N.Y. 2013) (declining to dismiss plaintiff's excessive force and state law assault and battery claims based on allegation of "excessively tight" handcuffing).  The defendants contend that "the [Second Amended Complaint] is devoid of allegations that Plaintiff was 'in imminent apprehension of harmful contact'" (State Def. Memo. at 21 (quoting Holtz v. Wildenstein & Co., 261 A.D.2d 336, 336, N.Y.S. 2d 516, 517 (1st Dep't 1999))), but dismissal would be inappropriate at this stage.  While the plaintiff did not expressly state that he was "in imminent apprehension," the facts, taken in the light most favorable to the plaintiff, support a

finding that Officer Rapaglia's actions inspired a reasonable fear of offensive contact, and did in fact result in a battery. Furthermore, I conclude that the plaintiff has plausibly pled that Officer Rapaglia's behavior was unreasonable.

Therefore, the State defendants' request to dismiss the twenty-second claim should be denied.

### iii. Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress ("IIED") under New York law, a plaintiff must allege: "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." Guan N. v. New York City Department of Education, No. 11 Civ. 4299, 2013 WL 67604, at *25 (S.D.N.Y. Jan. 7, 2013) (quoting Bender v. City of New York, 78 F.3d 787, 790 (2d Cir. 1996)); see also Howell v. New York Post Co., 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 353 (1993).

"The rigor of the outrageousness standard is well established." Mesa v. City of New York, No. 09 Civ. 10464, 2013 WL 31002, at *28 (S.D.N.Y. Jan. 3, 2013). The alleged conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Sullivan v. Andino, No. 09 Civ. 3668, 2012 WL 4714766, at *7 (S.D.N.Y. Sept. 18, 2012) (quoting Murphy v. American Home Products Corp., 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 236 (1983)). This threshold is exceedingly difficult to meet. Howell, 81 N.Y.2d at

122, 596 N.Y.S.2d at 353 (noting that every IIED claim considered by the New York Court of Appeals "has failed because the alleged conduct was not sufficiently outrageous"); cf. House v. Wackenhut Services, Inc., No. 10 Civ. 9476, 2011 WL 6326100, at *4 (S.D.N.Y. Dec. 16, 2011) (observing that IIED claims are "extremely disfavored . . . [and] routinely dismissed on pre-answer motion" (quoting Schaer v. City of New York, No. 09 Civ. 7441, 2011 WL 1239836, at *7 n.4 (S.D.N.Y. March 25, 2011))).

The facts alleged in the Second Amended Complaint fall far short of the conduct required to support a claim for IIED.  See Kirk v. Metropolitan Transportation Authority, No. 99 Civ. 3787, 2001 WL 258605, at *2-3, 8 (S.D.N.Y. March 14, 2001) (holding that striking plaintiff, over-tightening his handcuffs, falsely accusing him of a crime, and threatening him with prosecution were acts that "d[id] not rise to the level of 'outrageous' such as to support an IIED claim" ); see also Stella v. County of Nassau, 71 A.D.3d 573, 574, 896 N.Y.S.2d 357, 358 (1st Dep't 2010) (allegation that "defendants illegally evicted [plaintiffs] from the premises, ransacked their possessions, prevented them from removing their property, and videotaped the proceedings . . . d[id] not, as a matter of law, constitute sufficient grounds for intentional infliction of emotional distress"); Seltzer v. Bayer, 272 A.D.2d 263, 264-65, 709 N.Y.S.2d 21, 23 (1st Dep't 2000) (allegations that defendant dumped cement in front of plaintiff's house, tossed lighted cigarettes into his backyard, threw eggs on his front steps, and threatened to paint a swastika on his house insufficient

to survive summary judgment).

Because the plaintiff failed to allege sufficiently outrageous conduct, his IIED claim should be dismissed.

### iv. Negligent Infliction of Emotional Distress

Like a claim of intentional inflication of emotional distress, a claim of negligent inflication of emotional distress requires that the defendant's conduct be extreme and outrageous. See Berrios v. Our Lady of Mercy Medical Center, 20 A.D.3d 361, 362 799 N.Y.S.2d 452, 454 (1st Dep't 2005) (applying same outrageous conduct requirement to causes of action for intentional and negligent inflication of emotional distress); Wolkstein v. Morgenstern, 275 A.D.2d 635, 636-37, 713 N.Y.S.2d 171, 172 (1st Dep't 2000) ("[A] cause of action for negligent inflication of emotional distress must be based on allegations of conduct 'so extreme in degree and outrageous in character as to go beyond all possible bounds of decency, so as to be regarded as atrocious and utterly intolerable in a civilized community.'") (quoting Hernandez v. City of New York, 255 A.D.2d 202, 202 679 N.Y.S.2d 818, 818 (1st Dep't 1998)). As stated above, the plaintiff has failed to allege extreme and outrageous conduct.  Therefore, his twenty-fourth claim for negligent inflication of emotional distress against Officer Rapaglia should also be dismissed.

### v. Negligence

The plaintiff concedes he has failed to state a claim for negligence against Officer Rapaglia.  (Pl. State Memo. at 95). Thus, his twenty-fifth claim should be dismissed.

4.    <u>Officers Tusa and Daley and Lieutenant Shirlaw</u>

In his twenty-first claim, the plaintiff alleges that Lieutenant Shirlaw and Officers Daley and Tusa failed to intervene "to prevent the violation of his constitutional rights" by Officer Rapaglia. (2nd Am. Compl., ¶¶ 576-582). The State defendants have moved to dismiss this claim against Lieutenant Shirlaw. (State Def. Memo. at 25). With respect to Officers Daley and Tusa, the State defendants have moved to dismiss the failure to intervene claim only to the extent it is premised on the plaintiff's deliberate indifference claim against Officer Rapaglia. (State Def. Memo. at 25; State Def. Reply at 9).

"[L]aw enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." <u>Terebesi v. Torreso</u>, 764 F.3d 217, 243 (2d Cir. 2014) (quoting <u>Anderson v. Branen</u>, 17 F.3d 552, 557 (2d Cir. 1994)), <u>cert. denied</u>, ___ U.S. ___, 135 S. Ct. 1842 (2015). An officer may be liable for preventable harm caused by his or her failure to intervene during a constitutional violation where the officer had a "realistic opportunity" to intervene and prevent the harm. <u>Id.</u> at 243-44 (quoting <u>Anderson</u>, 17 F.3d at 557). There can be no failure to intervene, however, when no constitutional violation has occurred. <u>Henry-Lee v. City of New York</u>, 746 F. Supp. 2d 546, 566 (S.D.N.Y. 2010) ("An underlying constitutional violation is an essential element of a failure to intercede claim under § 1983.").

To the extent the plaintiff seeks to hold Lieutenant Shirlaw

56

and Officers Tusa and Daley liable for failing to respond to Officer Rapaglia's deliberate indifference to his medical needs, this claim fails as a matter of law because the plaintiff has not stated a claim against Officer Rapaglia for an unconstitutional denial of medical treatment. See Wieder v. City of New York, 569 F. App'x 28, 30 (2d Cir. 2014) ("Because the underlying constitutional claims were properly dismissed, we also affirm the district court's dismissal of plaintiff's failure to intervene claim."), cert. denied, __ U.S. __, 135 S. Ct. 2843 (2015); Hardy v. City of New York, No. 12 Civ. 17, 2013 WL 5231459, at *4 (S.D.N.Y. July 9, 2013) ("[T]he Court notes that it has dismissed Plaintiff's claims for constitutional violations. As a result, Plaintiff has alleged no violations in which the Individual Defendants could have intervened.").

The plaintiff likewise fails to state a claim against Lieutenant Shirlaw for failure to intervene with respect to Officer Rapaglia's alleged use of excessive force. Notably, there is no allegation that Lieutenant Shirlaw was present or otherwise had reason to know that excessive force was being used; nor is there any suggestion that she had a realistic opportunity to prevent the alleged harm. These deficits are fatal to the plaintiff's claim against Lieutenant Shirlaw.[18]   See Bowen v. Patrick, No. 11 Civ.

---

[18] The plaintiff makes an effort to salvage his § 1983 claim against Lieutenant Shirlaw by stating that he "will move this court to amend SAC and add a claim for failure to supervise, fraud and conspiracy." (Pl. State Memo. at 96). To the extent this can be read as a request to file a third amended complaint, I recommend denying the application. The plaintiff has alleged no facts that would provide a basis for any such claim.

4799, 2014 WL 3819200, at *5 (S.D.N.Y. Aug. 4, 2014) ("Because there is no evidence indicating that [defendant] was present at the time of the incident, [] the failure-to-intervene claim against him must be and is dismissed.").

Accordingly, I recommend the twenty-first claim be dismissed against Lieutenant Shirlaw in its entirety and against Officers Daley and Tusa to the extent it alleges a failure to intervene premised on deliberate indifference to medical treatment.

C.    Leave to Amend

The Second Circuit has held that a pro se litigant should be afforded at least one opportunity to "amend his complaint prior to its dismissal for failure to state a claim, unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." Gomez v. USAA Federal Savings Bank, 171 F.3d 794, 796 (2d Cir. 1999) (per curiam). The plaintiff has already been given two opportunities to amend. Additionally, any further attempt to amend the complaint would be futile. See Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with [plaintiff's] cause[] of action is substantive; better pleading will not cure it. Repleading would thus be futile."). Mindful of the plaintiff's pro se status, I have taken great pains to liberally construe the allegations in the Second Amended Complaint. Nonetheless, the majority of the plaintiff's claims fail on legal grounds that cannot be remedied by repleading. Therefore, I recommend that all claims that are dismissed be dismissed with prejudice.

Conclusion

For the foregoing reasons, I recommend granting D.A. Vance's motion to dismiss (Docket no. 35) and granting the State defendants' motion to dismiss (Docket no. 49), in part.

Specifically, I recommend dismissal of all claims against D.A. Vance and all claims against the State defendants, to the extent they are sued in their official capacities. I also recommend dismissal of Mr. Leibovitz's claims against Ms. Gardner for false arrest, false imprisonment, malicious prosecution, and malicious abuse of process under both New York State law and § 1983, and assault and battery under New York State law; his claims against Officier Rapaglia for deliberate indifference under § 1983, and intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence under New York State law; his claim of failure to intervene under § 1983 against Lieutenant Shirlaw; and his claim of failure to intervene under § 1983 against Officers Tusa and Daley to the extent it is predicated on Officer Rapaglia's alleged deliberate indifference. Finally, I recommend dismissal of Mr. Leibovitz's claims for declaratory and injunctive relief against the moving defendants.

I recommend denying the State defendants' motion to dismiss Mr. Leibovitz's claims of state law assault and battery against Officer Rapaglia. The State defendants did not move regarding the claims for excessive force as asserted against Officer Rapaglia or failure to intervene with respect to Officer Rapaglia's excessive force as asserted against Officers Tusa and Daley. Consequently,

in addition to the claims against the City defendants not yet considered, the remaining claims in this action are for excessive force, assault, and battery as alleged against Officer Rapaglia, and failure to intervene in the excessive force as asserted against Officers Tusa and Daley.

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from the date of this order to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Ronnie Abrams, Room 2203, 40 Foley Square, New York, New York 10007, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          December 18, 2015

Copies mailed this date to:

Etan Liebovitz
83-19 141st St., #207
Briarwood, NY 11435

60

Katherine M. Sprovieri, Esq.
New York City Law Department
100 Church St.
New York, NY 10007

Cynthia M. Sittnick, Esq.
Assistant District Attorney
One Hogan Place
New York, NY 10013

Angel M. Guardiola II, Esq.
Michael A. Berg, Esq.
Assistant Attorneys General
120 Broadway, 24th Floor
New York, NY 10271