```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -:
ETAN LEIBOVITZ,                        :    14 Civ. 3297 (RA) (JCF)
                                       :
            Plaintiff,                 :        REPORT AND
                                       :      RECOMMENDATION
                                       :
      - against -                      :
                                       :
THE CITY OF NEW YORK, et al.,          :
                                       :
            Defendants.                :
- - - - - - - - - - - - - - - - - -:
TO THE HONORABLE RONNIE ABRAMS, U.S.D.J.:
```

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: **3/17/16**

Pro se plaintiff Etan Leibovitz brings this action alleging twenty-five state and federal law causes of action against an array of state and municipal defendants, including the City of New York (the "City") and Detective Marisa Valle of the New York City Police Department.   The City and Detective Valle now move to dismiss the claims against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]   For the reasons that follow, I recommend granting the defendants' motion.

Background

Having devoted several pages in my previous report and recommendation to describing this action's factual underpinnings, I repeat here only those facts relevant to the present motion.   In

---

[1] I issued a report and recommendation on December 18, 2015, recommending that Mr. Leibovitz's claims against the other defendants in this case be dismissed, with a few exceptions. Specifically, I recommended allowing the following claims to proceed: (1) state law assault and battery against Officer Salvatore Rapaglia; (2) excessive force against Officer Rapaglia; and (3) failure to intervene with respect to Officer Rapaglia's use of excessive force as asserted against Officers Brian Daley and Nicole Tusa.   (Report and Recommendation dated Dec. 18, 2015 ("R&R"), at 59-60).

1

accordance with the standard for assessing a motion to dismiss, see generally Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), I derive these facts from Mr. Leibovitz's second amended complaint and take them as true.

On August 9, 2013, Judge Erika Edwards, who was presiding over Mr. Leibovitz's prosecution for harassment, criminal trespass, and resisting arrest (which stemmed from an incident on April 3, 2013), recused herself, and Mr. Leibovitz's case was reassigned to Judge Anthony Ferrara. (Second Amended Complaint ("2nd Am. Compl."), ¶¶ 166, 208). Judge Ferrara granted Mr. Leibovitz's application to proceed pro se, with his appointed counsel, Stuart Altman, to stay on as legal advisor to assist with matters such as composing subpoenas. (2nd Am. Compl., ¶¶ 215, 221). During the same hearing, Judge Ferrara ordered Mr. Leibovitz not to contact Judge Edwards or her court attorney, Alana Gardner, and instructed him that all communications with the court must be in writing. (2nd Am. Compl., ¶ 213). Mr. Leibovitz acknowledged that he understood Judge Ferrara's instructions. (2nd Am. Compl., ¶ 213).

In preparation for his criminal trial, Mr. Leibovitz sought to subpoena video footage of his arrest. (2nd Am. Compl., ¶¶ 219-222). However, his first subpoena, composed by Mr. Altman and signed by Judge Edwards prior to her recusal, contained an error. (2nd Am. Compl., ¶¶ 219-220). On August 28, 2013, after Mr. Altman directed Mr. Leibovitz to file a second subpoena on his own, Mr. Leibovitz called Judge Ferrara's chambers but was informed that the judge and his court attorney were on vacation. (2nd Am. Compl., ¶¶

2

221, 223).   On September 3, 2013, still unable to reach either Judge Ferrara or his court attorney, Mr. Leibovitz telephoned Ms. Gardner to request that Judge Edwards sign a new subpoena.   (2nd Am. Compl., ¶¶ 225-226).   Ms. Gardner would not speak to Mr. Leibovitz.   (2nd Am. Compl., ¶ 226).   Upset, Mr. Leibovitz called again, informed Ms. Gardner that he was going to file a civil lawsuit, and asked how to spell her name, Judge Edwards' name, and various court officers' names.   (2nd Am. Compl., ¶ 227).   Ms. Gardner reported Mr. Leibovitz's calls to the Assistant District Attorney ("A.D.A.") in the New York County District Attorney's Office who was prosecuting Mr. Leibovitz, Francesca Bartolomey. (2nd Am. Compl., ¶¶ 172, 228).   On September 9, 2013, at A.D.A. Bartolomey's request, Judge Neil E. Ross issued a bench warrant for Mr. Leibovitz's arrest for violating Judge Ferrara's order to not contact Judge Edwards or Ms. Gardner.   (2nd Am. Compl., ¶¶ 230-231).

Sometime after September 9, 2013, Detective Valle called Mr. Leibovitz and informed him of the bench warrant.   (2nd Am. Compl., ¶¶ 233-234).   When Detective Valle was unable to answer questions about the warrant to Mr. Leibovitz's satisfaction, she suggested he "come down to [her] office [and] appear in court to resolve the matter."   (2nd Am. Compl., ¶ 236).   Mr. Leibovitz refused.   (2nd Am. Compl., ¶ 242).   He then called Ms. Gardner on September 13, 2013, to ask if she was responsible for the bench warrant.   (2nd Am. Compl., ¶ 250).

On September 20, 2013, Detective Valle signed an arrest

3

affidavit and submitted a misdemeanor complaint charging Mr. Leibovitz with one count of aggravated harassment in the second degree and one count of criminal contempt in the second degree (2nd Am. Compl., ¶ 258); Ms. Gardner was the complaining witness (2nd Am. Compl., ¶¶ 29, 298, 506). A misdemeanor arrest warrant was issued. (2nd Am. Compl., ¶ 258). On September 23, 2013, Mr. Leibovitz was arrested twice, first by four officers executing the bench warrant, who arrested and transported him to Manhattan (2nd Am. Compl., ¶¶ 270-271), and then by Detective Valle executing the misdemeanor arrest warrant (2nd Am. Compl., ¶ 272). Mr. Leibovitz was subsequently arraigned and pled not guilty. (2nd Am. Compl., ¶ 274).

On January 31, 2014, a hearing in Mr. Leibovitz's second criminal case was held before Judge Ferrara. (2nd Am. Compl., ¶ 405). At that time, Judge Ferrara dismissed the charge of criminal contempt in the second degree. (2nd Am. Compl., ¶ 405). On May 13, 2014, the New York Court of Appeals held unconstitutional the section of the New York Penal Law pertaining to the charge of aggravated harassment in the second degree. (2nd Am. Compl., ¶ 414 (citing People v. Golb, 23 N.Y.3d 455, 466-68, 991 N.Y.S.2d 792, 800-01 (2014) (finding § 240.30(1) unconstitutional)). As a result, on May 19, 2014, the remaining charge of aggravated harassment was dropped, and Mr. Leibovitz's second criminal case was dismissed. (2nd Am. Compl., ¶ 416).

Mr. Leibovitz commenced this action on April 24, 2014. The Second Amended Complaint includes the following claims against

4

Detective Valle: (1) "malicious abuse of process" in violation of the Fourteenth Amendment (2nd Am. Compl., ¶¶ 487-494); (2) false imprisonment and false arrest in violation of both the Fourth Amendment and New York tort law (2nd Am. Compl., ¶¶ 495-501, 544-550); (3) malicious prosecution in violation of the Fourteenth and Fourth Amendments (2nd Am. Compl., ¶¶ 502-515); (4) another claim for malicious abuse of process, presumably in violation New York tort law (2nd Am. Compl., ¶¶ 534-539); (5) "maliciously procuring an unlawful misdemeanor arrest warrant" in violation of New York tort law (2nd Am. Compl., ¶¶ 540-543); (6) malicious prosecution in violation of New York tort law (2nd Am. Compl., ¶¶ 551-555); and (7) assault and battery in violation of New York tort law (2nd Am. Compl., ¶¶ 556-563).  In addition, the Second Amended Complaint includes the following claims against the City: (1) "directly caus[ing] the constitutional violations" committed by defendants District Attorney ("D.A.") Cyrus Vance, Jr., and A.D.A. Bartolomey through "policies, practices, and customs that condoned and fostered the unconstitutional conduct" (2nd Am. Compl., ¶¶ 424-442); (2) respondeat superior liability for the tort claims against D.A. Vance, A.D.A. Bartolomey, and Detective Valle (2nd Am. Compl., ¶¶ 443-446); and (3) negligent hiring, retention, training, and supervision of its employees in violation of New York tort law (2nd Am. Compl., ¶¶ 447-452).  Finally, the Second Amended Complaint alleges that the City and its employees violated the plaintiff's rights under the New York Constitution.  (2d Am. Compl., ¶¶ 453-457).

The City and Detective Valle moved on October 30, 2015, to dismiss all claims against them. The plaintiff has filed no opposition to that motion.[2]

Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). While a complaint need not make "detailed factual allegations," it must contain more than mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action." Id. (quoting Twombly, 550 U.S. at 555). A complaint with "'naked assertion[s]' devoid of 'further factual enhancement'" is insufficient. Id. (alteration in original) (quoting Twombly, 550 U.S. at 557). Further, where the complaint's allegations permit the court to infer only a possible, but not a plausible, claim for relief, it fails to meet the minimum standard. Id. at 679.

The court's task in ruling on a motion to dismiss "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." GVA Market Neutral Master Ltd. v. Veras Capital Partners Offshore

---

[2] The plaintiff requested and received several extensions of the deadline to file his opposition to the present motion. Most recently, on February 4, 2016, I gave him until February 19, 2016, to submit his opposition, while also indicating that the motion would "be deemed fully submitted" if he failed to comply. (Memorandum Endorsement dated Feb. 4, 2016).

Fund, Ltd., 580 F. Supp. 2d 321, 327 (S.D.N.Y. 2008) (quoting Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co. of New York, 375 F.3d 168, 176 (2d Cir. 2004)).  In doing so, a court should construe the complaint in the light most favorable to the plaintiff, "taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor."  Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009).  However, this tenet "is inapplicable to legal conclusions" and a court is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

A pro se complaint must be considered under a more lenient standard than would be applied to "formal pleadings drafted by lawyers." Bellamy v. Mount Vernon Hospital, No. 07 Civ. 1801, 2009 WL 1835939 *3 (S.D.N.Y. June 26, 2009) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)).  Even after Iqbal, a court should construe a pro se complaint "liberally and interpret it 'to raise the strongest arguments that [it] suggest[s].'"  Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (alterations in original)(quoting Harris v. City of New York, 607 F.3d 18, 24 (2d Cir. 2010)).  Nevertheless, proceeding pro se does not relieve a litigant of the minimum pleading requirements.  Id. at 170. "[E]ven pro se plaintiffs asserting civil right claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.'"  Jackson v. New York State Department of Labor, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (quoting Twombly,

550 U.S. at 555).

<u>Analysis</u>

    A.   <u>Detective Valle</u>

    Detective Valle moves to dismiss the federal and state law claims for false arrest and malicious prosecution on the ground that the existence of probable cause justified her actions. (Memorandum of Law in Support of Defendants City of New York and Detective Marisa Valle's Motion to Dismiss the Second Amended Complaint Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Def. Memo.") at 6). Alternatively, Detective Valle asserts that the doctrine of qualified immunity precludes her liability, as "it was objectively reasonable for [her] to believe that [the] plaintiff had engaged in harassing and contemptuous conduct sufficient to support the application for an arrest warrant and that she had probable cause to arrest him." (Def. Memo. at 12-13). Detective Valle further argues that the malicious abuse of process claims should be dismissed because the allegations "demonstrate that [she] was justified in obtaining an arrest warrant for [the] plaintiff, as well as [in] effectuating his arrest." (Def. Memo. at 14). Finally, Detective Valle moves to dismiss the assault and battery claim on the ground that her actions were privileged because she was effecting a lawful arrest. (Def. Memo. at 15-16).

1.  <u>False Arrest and False Imprisonment</u>[3]

The plaintiff alleges that Detective Valle violated his rights under the Fourth Amendment and New York tort law by arresting him in the absence of probable cause.  (2nd Am. Compl., ¶¶ 496, 545-49).  However, as Detective Valle argues, the plaintiff's own allegations establish that her actions were justified.  (Def. Memo. at 8).

False arrest is "an unlawful detention contrary to the will of the person detained, accomplished with or without process of law." <u>Curley v. AMR Corp.</u>, 153 F.3d 5, 13 (2d Cir. 1998) (quoting 59 N.Y. Jur. 2d <u>False Imprisonment</u> § 1 (1987)).  Under New York law, the elements of false imprisonment claim are that: (1) the defendant intentionally confined the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to

_____

[3] "In New York, false arrest and false imprisonment 'are two names for the same tort.'" <u>Biswas v. City of New York</u>, 973 F. Supp. 2d 504, 515 (S.D.N.Y. 2013) (quoting <u>Holland v. City of Poughkeepsie</u>, 90 A.D.3d 841, 845, 935 N.Y.S.2d 583, 589 (2d Dep't 2011)), <u>appeal dismissed sub nom.</u> <u>Biswas v. Kwait</u>, 576 F. App'x 58 (2d Cir. 2014).  Moreover, the Second Circuit has repeatedly observed that the elements of the New York common law tort of false arrest are "substantially the same" as the elements required to establish liability under § 1983 for a Fourth Amendment violation. <u>E.g.</u>, <u>Gonzalez v. City of Schenectady</u>, 728 F.3d 149, 155 (2d Cir. 2013); <u>Jenkins v. City of New York</u>, 478 F.3d 76, 84 (2d Cir. 2007); <u>Weyant v. Okst</u>, 101 F.3d 845, 852 (2d Cir. 1996).  Thus, where a plaintiff brings both a state common law action for false arrest and a § 1983 action for violation of his Fourth Amendment rights, assuming the defendant acted under color of state law, "a finding of liability for [] false arrest [under New York law] . . . would also require a finding of liability under § 1983." <u>Raysor v. Port Authority of New York and New Jersey</u>, 768 F.2d 34, 40 (2d Cir. 1980); <u>see also</u> <u>Monroe v. Pape</u>, 365 U.S. 167, 196 (1961) (Harlan, J., concurring) (noting that "the same act may constitute both a state tort and the deprivation of a constitutional right"), overruled on other grounds by <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978).

the confinement; and (4) the confinement was not otherwise privileged. <u>Ackerson v. City of White Plains</u>, 702 F.3d 15, 19 (2d Cir. 2012).

"Ordinarily, an arrest . . . pursuant to a warrant issued by a neutral magistrate is presumed reasonable because such warrants may issue only upon a showing of probable cause." <u>Walczyk v. Rio</u>, 496 F.3d 139, 155-56 (2d Cir. 2007); <u>see also</u> <u>Campbell v. County of Westchester</u>, 80 A.D.3d 641, 641-42, 914 N.Y.S.2d 674, 675 (2d Dep't 2011) (holding that existence of facially valid arrest warrant defeats cause of action for false arrest). Because the plaintiff himself alleges that Detective Valle arrested him pursuant to an arrest warrant (2nd Am. Compl., ¶ 272), to state a claim for false arrest he must allege facts that show that the warrant was invalid. The plaintiff advances two theories in this regard. First, he asserts that the warrant was not supported by probable cause. (2nd Am. Compl., ¶ 259). Second, he alleges that, in support of the application for an arrest warrant, Detective Valle submitted an affidavit that she knew omitted material facts and contained false and misleading statements. (2nd Am. Compl., ¶ 261). Neither position is consistent with the facts alleged in the Second Amended Complaint.

The affidavit Detective Valle submitted, which the plaintiff attached as an exhibit to the Second Amended Complaint (Misdemeanor (Arrest Warrant) ("Valle Aff."), attached as Exh. to 2nd Am. Compl.), provided a sufficient basis for issuance of the arrest warrant. Probable cause to arrest exists where "authorities have

knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Smith v. Edwards, 175 F.3d 99, 105 (2d Cir. 1999) (quoting Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991)). The existence of probable cause may be determined as a matter of law when there are no material factual disputes. See Betts v. Shearman, 751 F.3d 78, 82 (2d Cir. 2014) (upholding dismissal of claims based on existence of probable cause); Koester v. Lanfranchi, 288 F. App'x 764, 767 n.3 (2d Cir. 2008) (determining probable cause as a matter of law despite disputed facts where resolution of dispute in plaintiff's favor would not defeat probable cause); Orminski v. Village of Lake Placid, 268 A.D.2d 780, 781, 702 N.Y.S.2d 181, 182 (3d Dep't 2000).

New York Penal Law § 215.50(3) states that a person is guilty of criminal contempt in the second degree when he engages in "intentional disobedience or resistance to the lawful process or other mandate of a court." N.Y. Penal Law § 215.50(3). On August 9, 2013, Judge Ferrara directed the plaintiff not to contact Judge Edwards or Ms. Gardner. (2nd Am. Compl., ¶ 213). The plaintiff's calling Ms. Gardner several times after acknowledging he understood Judge Ferrara's order (which was entered in the court's minutes) (2nd Am. Compl., ¶¶ 213, 226, 250), is "sufficient to warrant a person of reasonable caution" to believe that he committed the offense of criminal contempt, Smith, 175 F.3d at 105.[4]

---

[4] As I explained in my earlier report and recommendation (R&R at 25), "an oral 'order' or directive, issued in the contemnor's presence, placed upon the record and transcribed into the minutes

Similarly, the statements in Detective Valle's affidavit establish probable cause to believe that the plaintiff had committed aggravated harassment in the second degree. At the time in question, Penal Law § 240.30(1)(a) provided that "[a] person is guilty of aggravated harassment in the second degree when, with intent to harass, annoy, threaten or alarm another person, he or she . . . communicates with a person . . . in a manner likely to cause annoyance or alarm." N.Y. Penal Law § 240.30 (as amended by 2008 N.Y. Sess. Laws, ch. 510 § 1, eff. Dec. 3, 2008).[5] According to Detective Valle's statement, the plaintiff called Ms. Gardner and left her numerous voice messages wherein he threatened to sue her, which actions "caused Ms. Gardner annoyance and alarm." (Valle Aff. at 1-2). Those allegations are sufficient to establish probable cause. See Silver v. Kuehbeck, 217 F. App'x 18, 22 (2d Cir. 2007) ("[A]fter [plaintiff's] 'agitation had grown to anger' . . . he attempted to contact [defendant] and left messages 'about her evident lack of consideration and disrespect' . . . . Such

_____

of the proceeding, may be deemed a 'mandate' . . . ." Betancourt v. Boughton, 204 A.D.2d 804, 808, 611 N.Y.S.2d 941, 945 (3d Dep't 1994) (collecting cases). The plaintiff's argument to the contrary (2nd Am. Compl., ¶ 216) has been expressly considered and rejected by New York courts, see Silverman v. Seneca Realty Co., 154 Misc. 35, 39-41, 276 N.Y.S. 466, 471-73 (N.Y. Sup. Ct. 1934) (rejecting argument that "proper construction of section 753 of the Judiciary Law requires a written order" and describing court's oral direction "made a part of the minutes taken by the stenographer and [] open to no misunderstanding" as "clearly" falling within section 28-a of the General Construction Law).

[5] This language reflects the text of the statute in effect at the time of the plaintiff's arrest in September 2013; it has since been amended. See 2014 N.Y. Sess. Laws ch. l88 § 1, eff. July 23, 2014.

undisputed facts clearly establish the elements of aggravated harassment, N.Y. Penal Law § 240.30(1). . . ."); Dzwonczyk v. Syracuse City Police Department, 710 F. Supp. 2d 248, 266 (N.D.N.Y. 2008) (finding "repeated unwanted written and verbal communications," which "persisted, despite Plaintiff having been twice contacted by police regarding the matter," established probable cause for second degree aggravated harassment).  The New York Court of Appeals' decision in Golb, 23 N.Y.3d at 467-68, 991 N.Y.S.2d at 800-01, holding § 240.30(1) unconstitutional, does not alter the analysis of probable cause.  Golb was decided after the plaintiff's arrest.  The violation of a presumptively valid statute that is later found unconstitutional supports a finding of probable cause.  Michigan v. DeFillippo, 443 U.S. 31, 37-38 (1979); Vives v. City of New York, 405 F.3d 115, 117-18 (2d Cir. 2004).

The alleged false statements and material omissions in Detective Valle's affidavit do not alter the analysis here because the facts included in the Second Amended Complaint establish probable cause.  See Smith, 175 F.3d at 105-07 (barring false arrest liability where probable cause exists notwithstanding alleged errors in officer's statement); see also Michaels v. City of New York, No. 10 Civ. 2666, 2011 WL 570125, at *6 (S.D.N.Y. Feb. 16, 2011) (dismissing false arrest claim where, accepting complaint's allegations as true, probable cause existed); Terio v. Michaud, No. 10 Civ. 4276, 2010 WL 6032586, at *4 (S.D.N.Y. Dec. 3, 2010) (noting that false arrest claim cannot survive motion to dismiss if "plaintiff's version of events establishes probable

cause to arrest"). Essentially, the plaintiff contends that probable cause would have been lacking if the judge issuing the arrest warrant had known (1) the procedural history of the plaintiff's criminal case; and (2) that Ms. Gardner worked for Judge Edwards.[6] (2nd Am. Compl., ¶¶ 261-265). He is wrong. The first contention is irrelevant, as Mr. Leibovitz arguably violated Judge Ferrara's order when he called Ms. Gardner on September 3, 2013, regardless of the events that preceded Judge Ferrara's order. And the second contention is frivolous; the first paragraph of Detective Valle's "factual basis" allegations states that Ms. Gardner works as "the court attorney for the Hon. Judge Erika Edwards." (Valle Aff. at 1).

Accordingly, the plaintiff's ninth and sixteenth claims should be dismissed as against Detective Valle.

2. Malicious Prosecution

The plaintiff asserts claims of malicious prosecution under both federal and state law. (2d Am. Compl., ¶¶ 502-515, 551-555). New York law provides the framework for both causes of action. Manganiello v. City of New York, 612 F.3d 149, 160-61 (2d Cir. 2010).

The elements of a claim for malicious prosecution under New York law are (1) that the defendant initiated a prosecution against the plaintiff, (2) that the prosecution was terminated in the

---

[6] Although the plaintiff alleges that Detective Valle's affidavit contains "false" statements, he does not specify which statements are untrue. Moreover, the Second Amended Complaint corroborates the statements in the affidavit.

14

plaintiff's favor, (3) that the defendant lacked probable cause to believe that the proceeding could go forward, and (4) that the defendant acted with malice. Id. at 161; see also Hines v. City of Yonkers, No. 08 Civ. 3126, 2011 WL 3055369, at *5 (S.D.N.Y. July 20, 2011); Broughton v. State, 37 N.Y.2d 451, 457, 373 N.Y.S.2d 87, 94 (1975). Failure to establish any element will defeat the entire claim. Hoyt v. City of New York, 284 A.D.2d 501, 502, 727 N.Y.S.2d 317, 318 (2d Dep't 2001). Thus, the existence of probable cause is a complete defense to a claim of malicious prosecution. See Manganiello, 612 F.3d at 161-62; Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003). The relevant inquiry is whether probable cause existed to believe the criminal proceeding could succeed. Posr v. Court Officer Shield No. 207, 180 F.3d 409, 417 (2d Cir. 1999); DiBlasio v. City of New York, 102 F.3d 654, 659 (2d Cir. 1996) ("In the context of a malicious prosecution claim, probable cause under New York law is the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of." (quoting Rounseville v. Zahl, 13 F.3d 625, 629 (2d Cir. 1994))).

I have already determined that the facts set out in the Second Amended Complaint provided probable cause to believe the plaintiff was guilty of the crimes for which Detective Valle secured the arrest warrant. Because the existence of probable cause is a complete defense to a claim of malicious prosecution, I recommend that the plaintiff's tenth and seventeenth claims for malicious

prosecution against Detective Valle be dismissed.

### 3. Maliciously Procuring an Arrest Warrant

Plaintiff's fifteenth cause of action, "maliciously procuring an unlawful arrest warrant" (2d Am. Compl., ¶¶ 541-543), should also be dismissed, as such a claim amounts to a claim under state law for malicious prosecution. See Malley v. Briggs, 475 U.S. 335, 340-41 (1986) (discussing common law rule that "one who procured the issuance of an arrest warrant by submitting a complaint could be held liable [for malicious prosecution] if the complaint was made maliciously and without probable cause"); Halberstadt v. New York Life Insurance Co., 194 N.Y. 1, 5, 8 (1909) (holding that "falsely making a serious criminal accusation" during "application for and issuance to a proper officer for execution of a warrant on a criminal charge" may form basis of claim for malicious prosecution).

### 4. Malicious Abuse of Process

"Procedural due process forbids the use of legal process for a wrongful purpose." Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994). Therefore, a defendant may be liable under § 1983 for malicious abuse of the criminal process. Savino, 331 F.3d at 76-77; Cook, 41 F.3d at 80. As with malicious prosecution, state law determines the elements of a § 1983 claim for malicious abuse of process. Cook, 41 F.3d at 80. Under New York law, a plaintiff must allege that the defendant: "(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in

order to obtain a collateral objective that is outside the legitimate ends of the process." Id.  The Second Amended Complaint fails to state a claim against Detective Valle for malicious abuse of process because it contains no facially plausible allegation of an improper collateral objective.

"The crux of a malicious abuse of process claim is the collateral objective element," Kraft v. City of New York, 696 F. Supp. 2d 403, 416 (S.D.N.Y. 2010), aff'd, 441 F. App'x 24 (2d Cir. 2011), which requires "an effect outside the intended scope of operation of the process employed," Jones v. Maples/Trump, No. 98 Civ. 7132, 2002 WL 287752, at *7 (S.D.N.Y. Feb. 26, 2002), aff'd sub nom. Jones v. Trump, 71 F. App'x 873 (2d Cir. 2003).  In other words, to meet this element a plaintiff must claim that the defendant aimed to achieve a purpose beyond or in addition to his criminal prosecution.  Kraft, 696 F. Supp. 2d at 416.  The plaintiff's allegations are deficient because his arrest and prosecution were within the intended scope of the process.  The arrest warrant that Detective Valle procured was "employed for the very purpose of [its] filing," namely the plaintiff's arrest for criminal contempt in the second degree and aggravated harassment in the second degree.  Silver v. Kuehbeck, 217 F. App'x 18, 21 (2d Cir. 2007).  Notwithstanding a defendant's motives, there can be no abuse of process where a defendant used the process of the court for the purpose for which the law created it.  Savino, 331 F.3d at 77; see also Brandon v. City of New York, 705 F. Supp. 2d 261, 275 (S.D.N.Y. 2010) ("If [one] uses the process of the court for its

17

proper purpose, though there is malice in his heart, there is no abuse of process." (alteration in original) (quoting Hauser v. Bartow, 273 N.Y. 370, 374, 7 N.E.2d 268, 269 (1937))); Butler v. Ratner, 210 A.D.2d 691, 693, 619 N.Y.S.2d 871, 873 (3d Dep't 1994) (stating that false accusations "and defendant's malicious motive in making them do not, of themselves, give rise to a cause of action for abuse of process").

The Second Amended Complaint fails to state a collateral objective that was outside the legitimate ends of the process employed. The plaintiff's allegation that Detective Valle procured a warrant and arrested the plaintiff "as retribution [for] the [p]laintiff['s] inform[ing] her that he was going to file a lawsuit" (2nd Am. Compl., ¶¶ 492, 537) does not establish an improper collateral objective, see Rodriquez v. Village of Sleepy Hollow, No. 13 Civ. 8465, 2015 WL 4597446, at *8 (S.D.N.Y. July 29, 2015) ("Plaintiffs fail to state that Defendants had any collateral intent . . . beyond political retribution. As retaliation does not suffice as a collateral motive, Plaintiffs fail to establish the third element of an abuse of process claim . . . ."); Sterngass v. Asheim, No. 12 Civ. 6106, 2013 WL 8284985, at *6 (S.D.N.Y. Nov. 26, 2013) ("As an initial matter, 'retribution,' by definition, cannot constitute a collateral objective for purposes of the tort of abuse of process."); cf. Duamutef v. Morris, 956 F. Supp. 1112, 1119 (S.D.N.Y. 1997) ("[A] complaint which alleges [a collateral objective] in wholly conclusory terms may safely be dismissed on the pleadings alone.") (quoting Flaherty v. Coughlin, 713 F.2d 10,

13 (2d Cir. 1983))).

Accordingly, the plaintiff's eighth and fourteenth claims should be dismissed as against Detective Valle.

### 5. Assault and Battery

Under New York law, an assault is "an intentional placing of another person in fear of imminent harmful or offensive contact," while a battery is "an intentional wrongful physical contact with another person without consent." Girden v. Sandals International, 262 F.3d 195, 203 (2d Cir. 2001) (quoting United National Insurance Co. v. Waterfront New York Realty Corp., 994 F.2d 105, 108 (2d Cir. 1993)). However, "where there has been a lawful arrest, intentional contact with the arrested person does not constitute assault and battery, provided such force is reasonable." Cunningham v. United States, 472 F. Supp. 2d 366, 381 (E.D.N.Y. 2007); accord Wyllie v. District Attorney of County of Kings, 2 A.D.3d 714, 718, 770 N.Y.S.2d 110, 114 (2d Dep't 2003) ("The [] defendants demonstrated their entitlement to summary judgment on the [assault and battery] cause of action by demonstrating the reasonableness of their conduct in arresting and transporting the plaintiff.").

The plaintiff fails to state a claim for assault and battery. The absence of any allegation that Detective Valle used excessive force,[7] combined with the conclusion that Detective Valle's arrest of the plaintiff was lawful, forecloses the claim. See Rodgers v.

---

[7] In fact, it does not appear that Detective Valle used any force in arresting the plaintiff, as he was already in custody at the time. (2nd Am. Compl., ¶¶ 271-272).

City of New York, 106 A.D.3d 1068, 1069-70, 966 N.Y.S.2d 466, 469 (2d Dep't 2013). I therefore recommend that the plaintiff's eighteenth cause of action be dismissed as against Detective Valle.

   B.   The City

      1.   Municipal Liability for Unlawful Policy

   "[A] municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." Jones v. Town of East Haven, 691 F.3d 72, 80 (2d Cir. 2012). A claim of municipal liability requires that the plaintiff "make factual allegations that support a plausible inference that the constitutional violations took place pursuant to [a municipal policy or custom]." Missel v. County of Monroe, 351 F. App'x 543, 545 (2d Cir. 2009); see also Monell, 436 U.S. at 690-91. An "official policy" may be implemented through a "policy statement, ordinance, regulation, or decision" that is officially promulgated by a municipality's policy makers. Anthony v. City of New York, 339 F.3d 129, 139 (2d Cir. 2003) (quoting Monell, 436 U.S. at 690). For the purposes of municipal liability, a "custom" must be so entrenched and well-established as to constitute a practice with the force of law. Patterson v. County of Oneida, 375 F.3d 206, 226 (2d Cir. 2004).

   The Second Amended Complaint does not contain allegations sufficient to establish the existence of an unlawful municipal policy. Although the plaintiff refers to a "conviction rate policy" (2nd Am. Compl., ¶ 426), as I explained in the prior report

20

and recommendation (R&R at 15-16), the plaintiff's allegations do not establish an unconstitutional policy; the "policy" the plaintiff has identified is one governing the collection of statistical data. See Castillo v. Commissioner New York State Department of Correctional Services, No. 06-CV-858A, 2008 WL 4501881, at *2 (W.D.N.Y. Sept. 30, 2008) (dismissing complaint containing only conclusory reference to alleged unconstitutional policies). Even if a policy of using conviction rate data as "a tool . . . to determine how effective[ly] the [District Attorney's] [o]ffice is conducting business" were, by itself, unconstitutional (2nd Am. Compl., ¶ 429), the plaintiff also fails to establish the requisite causal link between any such policy and the constitutional violations he allegedly suffered. He simply states that the policy prompted A.D.A. Bartolomey to procure an unlawful bench warrant (2nd Am. Compl., ¶ 431) and "provid[e] unlawful legal advice" to Detective Valle regarding the existence of probable cause to arrest him (2nd Am., ¶ 432). The plaintiff provides no information that plausibly shows how the policy motivates unconstitutional conduct. In fact, a policy prioritizing an office's conviction rate would arguably dissuade attorneys from pursuing unfounded cases -- the exact opposite of what the plaintiff appears to contend here.

Accordingly, I recommend that the plaintiff's first cause of action be dismissed.

### 2. Respondeat Superior and Negligence Claims

"Unlike cases brought under § 1983, municipalities may be

21

liable for the common law torts, like false arrest and malicious prosecution, committed by their employees under the doctrine of respondeat superior." L.B. v. Town of Chester, 232 F. Supp. 2d 227, 239 (S.D.N.Y. 2002). Nevertheless, the plaintiff's claim against the City on the basis of respondeat superior cannot survive for the simple reason that the plaintiff has not made out a valid tort claim against any of the City's employees. See Wende C. v. United Methodist Church, 6 A.D.3d 1047, 1052, 776 N.Y.S.2d 390, 395 (4th Dep't 2004) (noting that "[i]n the absence of any wrongful or actionable underlying conduct . . . there can be no imposition of vicarious liability . . . pursuant to the doctrine of respondeat superior" and collecting cases). Therefore, I recommend that the plaintiff's second claim (and any other claims against the City premised on a theory of respondeat superior) be dismissed.

The plaintiff's claim against the City for negligent hiring, retention, training, and supervision should also be dismissed. First, there is no allegation that any of the City's employees acted outside the scope of their employment, a requirement for holding the City liable. Jones v. City of New York, 988 F. Supp. 2d 305, 319 (E.D.N.Y. 2013). Moreover, as with the respondeat superior claim, this cause of action is also foreclosed by the fact that the plaintiff has not alleged a viable tort claim against any City employee. See Cerbelli v. City of New York, No. 99 CV 6846, 2008 WL 4449634, at *24 (E.D.N.Y. Oct. 1, 2008) (indicating that negligent hiring, etc., claims require underlying tort committed by employee). I recommend dismissing the plaintiff's third cause of

22

action.

C.  <u>State Constitutional Claims</u>

The plaintiff identifies two provisions of the New York Constitution that he alleges the City and its employees violated: Article I, Section 12, and Article I, Section 6.  (2nd Am. Compl., ¶ 454).  Because these claims are duplicative of the plaintiff's claims under the Fourth and Fourteenth Amendments to the federal Constitution, <u>see</u> <u>People v. Johnson</u>, 66 N.Y.2d 398, 406, 497 N.Y.S.2d 618, 624 (1985) ("[The New York Court of Appeals] has repeatedly stated that the proscription against unlawful searches and seizures contained in [Article I, Section 12] conforms with that found in the [Fourth] Amendment, and that this identity of language supports a policy of uniformity between State and Federal courts."); <u>Central Savings Bank v. City of New York</u>, 280 N.Y. 9, 10 (1939) (per curiam) ("[The due process clauses in the New York and Federal constitutions] are formulated in the same words and are intended for the protection of the same fundamental rights of the individual and there is, logically, no room for distinction in definition of the scope of the two clauses."), which I have already rejected, I recommend dismissing the plaintiff's fourth claim.

D.  <u>Leave to Amend</u>

The Second Circuit has held that a <u>pro se</u> litigant should be afforded at least one opportunity to "amend his complaint prior to its dismissal for failure to state a claim, unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim."  <u>Gomez v. USAA</u>

Federal Savings Bank, 171 F.3d 794, 796 (2d Cir. 1999) (per curiam). The plaintiff has already been given two opportunities to amend. Additionally, any further attempt to amend the complaint would be futile. See Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with [plaintiff's] causes of action is substantive; better pleading will not cure it. Repleading would thus be futile."). Mindful of the plaintiff's pro se status, I have taken great pains to liberally construe the voluminous allegations in the Second Amended Complaint. Nonetheless, the plaintiff's claims fail on legal grounds that cannot be remedied by repleading. Therefore, I recommend that all claims asserted against the moving defendants be dismissed with prejudice.

Conclusion

For the foregoing reasons, I recommend granting the defendants' motion to dismiss and dismissing all claims against the City and Detective Valle. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from the date of this order to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Ronnie Abrams, Room 2203, 40 Foley Square, New York, New York 10007, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          March 17, 2016


Copies mailed this date to:

Etan Liebovitz
83-19 141st St., #207
Briarwood, NY 11435

Katherine M. Sprovieri, Esq.
Richard Bahrenburg, Esq.
New York City Law Department
100 Church St.
New York, NY 10007

Cynthia M. Sittnick, Esq.
Assistant District Attorney
One Hogan Place
New York, NY 10013

Angel M. Guardiola II, Esq.
Michael A. Berg, Esq.
Assistant Attorneys General
120 Broadway, 24th Floor
New York, NY 10271